Marilyn BATTEN, Individually; and Mark Richard Batten, as Executor of the Estate of Roy Swope, Deceased, Appellants,

v.

Kenneth E. HUNT, M.D., Appellee.

No. 03–99–00095–CV.

Court of Appeals of Texas, Austin.

Sept. 16, 1999.

Rehearing Overruled Oct. 14, 1999.

Review Denied Dec. 16, 1999.

Jay L. Winckler, Winckler & Harvey, L.L.P., Austin, for Appellants.

Michael S. Hull, Locke Liddell & Sapp LLP, Austin, for Appellee.

Before Justices JONES, KIDD and PATTERSON.

MACK KIDD, Justice.

Marilyn Batten, individually, and Mark Richard Batten, as executor of Roy Swope's estate, appeal the take-nothing summary judgment rendered against their negligence and wrongful death claims brought against Kenneth E. Hunt, M.D. The sole ground of the motion for summary judgment was that the two-year statute of limitations barred the claims against Hunt. We will affirm the judgment.

## BACKGROUND

In 1989, following a referral by Swope's primary physician, Thomas Parker, Hunt removed a large, precancerous tumor from Swope's colon. Hunt treated Swope during three subsequent, brief hospitaliza-tions. Hunt did not treat Swope after May 18, 1989.

In 1998, Swope and his wife, Marilyn Batten, sued Hunt and Parker after learning in late 1997 that Swope had colon cancer. They alleged that Parker, his physician from the early 1980s until 1997, was negligent for failing to recommend follow-up colonoscopies or similar diagnostic tests based on Swope's subsequent symptoms. They alleged that Hunt negligently failed to advise Swope of the need for follow-up tests for polyps and tumors. They contended that the doctors' inaction caused Swope's cancer to go undiagnosed until it spread to lymph nodes and the muscle wall surrounding the colon. Swope and Batten alleged that Swope could not have discovered before 1997 either that he had cancer or that the doctors breached the standard of care.

Swope died a few months after filing suit. In October 1998, Mark Batten joined the suit as executor of Swope's estate.

The trial court granted Hunt's motion for summary judgment based on the two-year statute of limitations in the Medical Liability Act. See Tex. Civ. Stat. Ann. art. 4590i, § 10.01 (West Supp.1999).

## DISCUSSION

We review the summary-judgment record to determine whether the movant established the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Tex.R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). We view the record and reasonable inferences therefrom in the light most favorable to the nonmovant and resolve against the movant all doubts about the existence of a genuine issue of material fact. Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.1965).

Absent tolling or other delay of the limitations period, the causes of action are

time-barred. The statute of limitations for these causes of action provides as follows:

> Notwithstanding any other law, no health care liability claim may be commenced unless that action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.

Tex. Civ. Stat. Ann. art. 4590i, § 10.01. The limitations period runs from one of three dates: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987). Hunt asserts without contradiction that he last treated Swope on May 18, 1989. Swope did not file this suit until 1998, considerably more than two years after the last treatment.

■ Hunt's alleged failure to order or advise further testing does not extend the "treatment" period for limitations purposes. *See Bala v. Maxwell*, 909 S.W.2d 889, 892 (Tex.1995); *see also Rowntree v. Hunsucker*, 833 S.W.2d 103, 108 (Tex. 1992). In *Rowntree*, a doctor examined a patient and prescribed medication for hypertension; the patient's last office visit was in September 1986. *Id.* at 104. She requested a prescription refill from the doctor's office by telephone in May 1987, last refilled that prescription in December 1987, and suffered a stroke from an occluded carotid artery in January 1988. *Id.* She sued in 1989. The supreme court found the suit time-barred because it was filed more than two years after her last *office visit*; refilling the prescriptions did not delay the onset of the limitations period. *Id.* at 108. In *Bala*, the doctor examined a patient in December 1986 and discovered a stomach lesion that showed no signs of malignancy. *Bala*, 909 S.W.2d at 890. Tests in December 1987 were less conclusive, but the final report stated that the cells were consistent with a benign tumor. In July 1989, new tests revealed cancerous cells in the stomach and lung. *Id.* The patient's survivors argued that, by failing to diagnose cancer in 1987 and failing to begin treatment, the doctor's negligence continued for limitations purposes until the cancer was discovered. *Id.* at 892. The supreme court rejected that argument, writing, "We have previously held that when a physician fails to diagnose a condition, the continuing nature of the diagnosis does not extend the tort for limitations purposes." *Id.* The supreme court held that, because the doctor discovered the cancer in 1989, limitations ran from the last potentially negligent examination in 1987. *Id.* The *Bala* court distinguished the case from the situation in which a physician twice determined that a lump in the patient's breast was benign, but then failed to inquire about the lump during subsequent examinations. *Id.* at 891 (citing *Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex.1993)). The supreme court held in *Chambers* that the doctor's failure to inquire on the subsequent visits meant that limitations did not begin to run until the last of the examinations. *Chambers*, 883 S.W.2d at 158.

As in *Bala* and *Rowntree*, the limitations period for Swope's claims against Hunt ran from his last treatment of Swope. There is no proof in this record of any negligence or misdiagnosis of the benign tumor which Hunt removed in 1989; nor is there any proof or allegation that Hunt examined Swope and failed to order or recommend tests after May 1989. Any failure to order further tests did not create a lingering tort for limitations purposes. *See Bala*, 909 S.W.2d at 892. Swope had to sue Hunt by May 1991 and failed to do so.

■ The Battens contend that their suit is nonetheless protected from the limitations bar by the open-courts provision of the Texas Constitution, which provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands,

goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. 1, § 13. This provision invalidates limitations statutes when used "to cut off an injured person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit." *Nelson v. Krusen,* 678 S.W.2d 918, 923 (Tex.1984). In *Nelson,* a doctor told a woman she was not a genetic carrier of muscular dystrophy. *Id.* at 920. She had a child who almost four years later was diagnosed with that form of muscular dystrophy. *Id.* The supreme court held that, because she could not have known of the flaw in the diagnosis at the time of the diagnosis, the open-courts provision prevented the limitations period from running until she could reasonably be expected to discover it. *Id.* at 923.

■ We reject Hunt's contention that the open-courts provision does not apply to the Battens' claims. The supreme court has held that the open-courts provision, which preserves common-law claims, does not protect statute-based survival and wrongful-death claims. *See Diaz v. Westphal,* 941 S.W.2d 96, 101 (Tex.1997); *Bala,* 909 S.W.2d at 893. However, in those cases the decedent did not file suit, and the survivors found their attempt to initiate their original statutory claims not protected by the open-courts provision. *Diaz,* 941 S.W.2d at 101; *Bala,* 909 S.W.2d at 893. Interestingly, the supreme court recently declined to review a First Court of Appeals case holding that the open-courts provision's shield of a negligence suit filed by a decedent before death does extend to shield the derivative claims by his survivors. *Martin v. Catterson,* 981 S.W.2d 222, 226 (Tex.App.—Houston [1st Dist.] 1998), *pet. denied,* 42 Tex. S.Ct. J. 778, 2 S.W.3d 249 (1999). In 1990, Catterson treated Martin for a spot on his scalp that Catterson considered noncancerous. *Martin,* 981 S.W.2d at 224. In 1993, another doctor found that spot malignant. Martin sued in 1994, alleging that, because his claims were not discoverable within two

years of his last treatment by Catterson, the open-courts provision prevented limitations from barring his common-law negligence claims. After Martin died in 1996, the trial court, which had denied a limitations-based summary-judgment motion against Martin's claims, granted it against the survivors' claims. *Id.* at 224. The First Court reversed, expressly rejecting the trial court result:

> Such a result would reward negligent doctors for the death of their patients. For no good reason, such a rule would make it cheaper in some cases (like this one) to kill a patient than to maim him. Further, it would encourage defendants to prolong litigation in hope that a plaintiff's claims would die with him.

> \* \* \*

> Transformation of the common-law claims to statutory claims because of Donald Martin's death does not suddenly end their protection under the open-courts doctrine. Though the claims are now statutory, they were not statutory when the negligence occurred, when the suit was filed, or at any time before Mr. Martin died. Because the claims were cognizable common-law causes of action when filed and at all times before Mr. Martin died, we hold that the open-courts doctrine applies and these claims are not barred by limitations.

*Id.* at 225. The supreme court quoted the latter of these paragraphs, then stated, "In denying Dr. Alan Catterson and Kelsey–Seybold Clinic's petition for review, we neither approve nor disapprove of this language in the court of appeals' opinion." *Catterson,* 42 Tex. S.Ct. J. at 779, 2 S.W.3d at 249. Any application of the open-courts provision that protected Swope's claims from the limitations period also protects the Battens' derivative survival and wrongful-death claims.

■ We conclude, however, that Swope's claims against Hunt were themselves not preserved by the open-courts provision. The supreme court uses a two-

part test to determine the effect of the open-courts provision: a litigant asserting that a limitations statute violates the open-courts provision "must show (1) that he has a cognizable common-law cause of action, and (2) that restriction of the claim is unreasonable or arbitrary when balanced against the statute's purpose." *Diaz*, 941 S.W.2d at 100. The allegation is that Hunt "was negligent for failing to recommend follow-up colonoscopies at appropriate times." Swope's claim satisfies the first prong of the test because negligence is a cognizable cause of action. However, we do not find application of the two-year limitations period unreasonable or arbitrary. Swope did not allege that Hunt was negligent in the removal of the polyp, misinterpreted the test results of that polyp, or prescribed a harmful course of treatment. Swope did not allege that Hunt told him that the surgery freed him from future vigilance against colon cancer. Nor did Swope allege that he had any contact with Hunt after 1989. Swope only alleged that "[b]etween 1989 and 1997, your Plaintiff Roy Swope had signs and symptoms to indicate the possibility of colon cancer while under the care and treatment of *Dr. Parker*, including severe fatigability, episodes of weight loss, severe diarrhea, and blood in his stools." (Emphasis added.) On these facts, application of the limitations statute is reasonable and not arbitrary. Even if it were unreasonable to require Swope to know in May 1989 that Hunt should have told him to have follow-up examinations, his continuing symptoms certainly provided the impetus to seek further examinations well before 1996. Once Swope reasonably should have felt the need to be examined, any failure by *Hunt*[1] to tell him to get examined became a nonfactor in Swope's course of treatment. The open-courts provision did not shield Swope's causes of action against Hunt from the limitations bar.

---

1. We note that the primary lawsuit against Dr. Parker based upon these same allegations

**CONCLUSION**

Because Swope's causes of action against Hunt were barred by the statute of limitations, the Battens' derivative causes of action were also barred. The trial court did not err by rendering a take-nothing summary judgment of that basis on Swope's claims against Hunt. We affirm the trial court's judgment.

is still pending in district court, and we express no opinion on the merits of that claim.