**Sharon BOYD, Appellant,**

v.

**G. Byron KALLAM, M.D.; Mary Angeline Finke, M.D.; The Medical Clinic of North Texas, P.A.; Gerald Thompson, M.D.; Family Healthcare Associates, Appellees.**

**No. 2–03–362–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 24, 2004.

Charles W. Fillmore, Fillmore Law Firm, L.L.P., Fort Worth, for Appellant.

Strasburger & Price, L.L.P., Joseph A. Turano, and Christine D. Roseveare, Dallas, for Gerald Thompson, M.D. and Family Healthcare Associates.

Wallach, Andrews & Stouffer, P.C., J. Wade Birdwell, D. Michael Wallach, and Jennifer M. Andrews, for G. Byron Kallam, M.D., Mary Angeline Finke, M.D., The Medical Clinic of North Texas, P.A.

Panel A: GARDNER, WALKER, and McCOY, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

The trial court granted a partial summary judgment for Appellees on statute of limitations grounds in this medical malpractice case. Because Appellant Sharon Boyd pleaded the open courts provision of the Texas Constitution and also produced summary judgment evidence raising a genuine issue of material fact concerning whether she had a reasonable opportunity to learn of Appellees' alleged wrongs or her alleged injury within the limitations period, we reverse the trial court's partial limitations summary judgment for Appellees G. Byron Kallam, M.D., Mary Angeline Finke, M.D., and Gerald Thompson, M.D. on Boyd's negligent failure to diagnose claims, misdiagnosis claims, and negligent failure to order diagnostic testing claims. We also reverse the trial court's partial summary judgment for Appellees Family Healthcare Associates and the Medical Clinic of North Texas, P.A. on Boyd's claims that these entities are vicariously liable for alleged negligence in failing to diagnose Boyd's cancer, misdiagnosing her cancer, and failing to order diagnostic testing. We remand these claims to the trial court.

We affirm the trial court's partial summary judgment for Appellees G. Byron Kallam, M.D., Mary Angeline Finke, M.D., the Medical Clinic of North Texas, P.A., Gerald Thompson, M.D., and Family Healthcare Associates on Boyd's failure-to-screen-based-on-age claims. We also affirm the trial court's partial summary judgment for Family Healthcare Associates on Boyd's direct negligence theories of recovery.[1]

---

1. The trial court also previously granted a partial summary judgment for Obstetrical and Gynecological Associates of Arlington on the ground that Drs. Kallam and Finke and Nurse Jefferies were no longer employed by this entity at the time of their alleged negligence

## II. FACTUAL AND PROCEDURAL BACKGROUND

An April 11, 2002 colonoscopy performed on Boyd revealed that she had stage IV colorectal cancer. The doctor who performed the colonoscopy told Boyd that she had a large, cancerous tumor in her sigmoid colon and that either this tumor or some precursor abnormality, probably in the form of an adenomatous polyp, had been present and growing in her colon since 1996. Boyd filed suit on August 30, 2002, alleging that Appellees' treatment of her, including treatment as early as 1996, was negligent in several respects, including failing to screen her for colorectal cancer after she became fifty years old, misdiagnosing her rectal bleeding as stemming from hemorrhoids, failing to diagnose her colorectal cancer, and failing to order diagnostic testing that would have revealed the cancer. Boyd pleaded that the open courts provision of the Texas Constitution precluded the application of the statute of limitations to her claims because she did not have a reasonable opportunity to learn of Appellees' alleged wrongs or her alleged injury prior to the expiration of limitations. Appellees filed motions for partial summary judgment on the affirmative defense of limitations.[2] Appellees asserted that Boyd's claims alleging negligence occurring more than two years before Boyd filed suit—that is, prior to August 30, 2000—were barred by the statute of limitations.[3] Boyd responded, filing summary judgment evidence that she claims raises a genuine issue of material fact concerning whether she had a reasonable opportunity to discover the Appellees' alleged wrongs or her alleged injury within the limitations period. The trial court granted Appellees' motions for partial summary judgment and signed an order severing these claims. Boyd perfected this appeal.

## III. STANDARD OF REVIEW

### A. Summary Judgment for Defendants Based on Limitations

The statute of limitations is an affirmative defense. TEX.R. CIV. P. 94; *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988). A defendant moving for summary judgment on a statute of limitations affirmative defense must prove conclusively that defense's elements. *Shah v. Moss,* 67 S.W.3d 836, 842 (Tex. 2001); *Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 530 (Tex.1997). In reviewing a trial court's summary judgment, we resolve all doubts against the movant, and we view the evidence in the light most favorable to the nonmovants. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). Additionally, in determining whether a disputed material fact issue exists, we take as true evidence favorable to the nonmovant. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). Accordingly, the burden is on the movant to conclusively estab-

and issued an order severing this claim. That partial summary judgment is not challenged here. Accordingly, Obstetrical and Gynecological Associates of Arlington is, and shall hereinafter be, omitted from the style of this appeal.

**2.** Appellees moved for summary judgment based on article 4590i, section 10.01, which was subsequently repealed. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 10.01, *repealed by* Act of June 2, 2003, 78th Leg., R.S.,

ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74 (Vernon 2004)). The old law continues in effect for application to cases like this one, filed before the new Act's September 1, 2003 effective date. We hereinafter cite the old law as article 4590i.

**3.** Appellees did not move for summary judgment on Boyd's claims alleging negligence occurring after August 30, 2000.

lish as a matter of law that limitations is a bar to the action. *See Rowntree v. Hunsucker,* 833 S.W.2d 103, 104 (Tex.1992); *Lovato v. Austin Nursing Ctr., Inc.,* 113 S.W.3d 45, 50–51 (Tex.App.-Austin 2003, pet. granted) (op. on reh'g). If a movant does establish that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Woods,* 769 S.W.2d at 518; *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975); *see generally City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979) (holding that when movant establishes right to summary judgment, burden shifts to nonmovant to raise fact issue precluding judgment).

## B. Avoidance of Limitations Via Open Courts Provision

▉ A plea in confession and avoidance is one that avows and confesses the truth in the averments of fact, either expressly or by implication, but then proceeds to allege a new matter which tends to deprive the facts admitted of their ordinary legal effect, or to obviate, neutralize, or avoid them. *Woods,* 769 S.W.2d at 517. A plea in confession and avoidance must be raised by pleadings. *Id.* at 518. The party seeking to benefit from the plea in avoidance also bears the burden of proof on the matter because that party will generally have greater access to the facts necessary to establish the matter. *Id.*

▉ An assertion that the open courts provision of the Texas Constitution renders application of a statute of limitations to a particular plaintiff unconstitutional is a plea in confession and avoidance: confessing that the claims are brought outside the statutory limitations period, but asserting that the limitations statute, as applied to the particular plaintiff's claims, is un-

constitutional as violative of the Texas Constitution's open courts provision. *See* Tex.R. Civ. P. 94 ("In pleading to a preceding pleading, a party shall set forth ... any other matter constituting an avoidance...."). Thus, a plaintiff seeking to avoid a limitations summary judgment on the ground that application of the statutory limitations period violates the Texas Constitution's open courts provision has the burden of pleading and proof on the as-applied unconstitutionality of the statute. *Accord Walker v. Gutierrez,* 111 S.W.3d 56, 66 (Tex.2003) (recognizing that party challenging statute has burden to prove unconstitutionality); *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 222 (Tex.2002) (refusing to consider constitutional open-courts claim not pleaded in trial court); *In re Doe 2,* 19 S.W.3d 278, 284 (Tex.2000) (recognizing that absent a pleading raising issue of unconstitutionality, trial court is generally without authority to reach the issue).

▉ A plaintiff raising an as-applied open courts challenge to the constitutionality of article 4590i, section 10.01 in response to a defendant's summary judgment motion conclusively establishing the affirmative defense of limitations bears the burden of raising a fact issue showing no reasonable opportunity to discover the alleged wrong and to bring suit before the limitations period expired. *Shah,* 67 S.W.3d at 846 (recognizing that "it was [the plaintiff's] burden to raise a fact issue demonstrating that he did not have a reasonable opportunity to discover the alleged wrong before the limitations period expired so that the open courts guarantee applies"); *Earle,* 998 S.W.2d at 889 (recognizing that "plaintiff must raise a fact issue concerning the applicability" of the open courts provision to avoid summary judg-

ment on limitations).[4]

The open courts provision of the Texas Constitution provides, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. The open courts provision specifically guarantees all litigants the right to redress their grievances—to use a popular and correct phrase, the right to their day in court. *LeCroy v. Hanlon*, 713 S.W.2d 335, 341 (Tex.1986). The open courts provision acts as an additional due process guarantee granted in the Texas Constitution. *See id.* at 340–41; *McGlothlin v. Cullington*, 989 S.W.2d 449, 452 (Tex.App.-Austin 1999, pet. denied), *cert. denied*, 528 U.S. 1062, 120 S.Ct. 616, 145 L.Ed.2d 511 (1999); *see also Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983) (recognizing open courts provision is "quite plainly a due process guarantee"). Because the Texas Constitution's open courts provision confers substantial rights to Texas citizens, the legislature cannot arbitrarily or unreasonably interfere with this right. *LeCroy*, 713 S.W.2d at 341. Accordingly, a statute or ordinance that unreasonably abridges a justiciable right to obtain redress for injuries caused by the wrongful acts of another amounts to a denial of due process under the open courts provision. *Shah*, 67 S.W.3d at 842; *Sax*, 648 S.W.2d at 665.

To establish that a statute violates the open courts provision and thereby denies him due process, a plaintiff must satisfy a two-part test: (1) he must show he has a well recognized common-law cause of action that is being statutorily restricted; and (2) he must show the restriction is unreasonable or arbitrary when balanced against the legislature's actual purpose in enacting the statute. *Sax*, 648 S.W.2d at 665; *In re Hinterlong*, 109 S.W.3d 611, 626 (Tex.App.-Fort Worth 2003, orig. proceeding); *see also Owens Corning v. Carter*, 997 S.W.2d 560, 573 (Tex.), *cert. denied*, 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999). Concerning the first prong, Texas courts have long recognized that medical negligence claims are well-defined common-law causes of action. *Lucas v. United States*, 757 S.W.2d 687, 690 (Tex. 1988). And a statute of limitations provision clearly statutorily restricts this common-law medical negligence cause of action by limiting the time for bringing a suit. *See, e.g., Sax*, 648 S.W.2d at 666. Thus, a medical negligence statute of limitations provision operating to bar a plaintiff's medical negligence claim satisfies the first prong of the open courts analysis.

Concerning the second prong, the legislature's actual purpose in enacting statute of limitations provisions limiting the time for bringing a medical negligence suit is legitimate: to limit the length of time that medical professionals will be exposed to potential liability and thereby reduce medical malpractice insurance rates. *Id.; see also* TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.02. The only undecided issue, therefore, is whether the restriction—the proscription of the plaintiff's medical negli-

---

**4.** We disagree with the cases holding that a plaintiff bears the burden of pleading, but not of proof, concerning an open courts violation. *See, e.g., Simmons v. Healthcare Ctrs. of Tex., Inc.*, 55 S.W.3d 674, 678 (Tex.App.-Texarkana 2001, no pet.) (holding plaintiff must only allege facts setting up open courts defense); *Voegtlin v. Perryman*, 977 S.W.2d 806, 811 (Tex.App.-Fort Worth 1998, no pet.) (same:

holding plaintiff has only burden of pleading violation of open courts provision); *Krueger v. Gol*, 787 S.W.2d 138, 140 (Tex.App.-Houston [14th Dist.] 1990, writ denied) (op. on reh'g) (holding defendant doctor bore burden of proof to establish no genuine issue of fact existed concerning when the plaintiff should have learned of the alleged malpractice).

gence suit—is reasonable when balanced against the legislature's purpose in enacting the statute—to limit the time that medical professionals will be exposed to liability. *See Lucas,* 757 S.W.2d at 690 (recognizing medical negligence claim was common-law cause of action and damage cap restricted plaintiff's right to redress on this common-law claim, so "the remaining inquiry is whether the restriction on [the plaintiffs'] right of recovery 'is unreasonable *or* arbitrary when balanced against the purpose and basis of the statute' "). The law is well settled on this issue: The restriction imposed in health care liability claims by article 4590i, section 10.01's statute of limitations is reasonable and does not violate the open courts guarantee if the plaintiff had a reasonable opportunity to discover the alleged wrong and to bring suit before the limitations period expired. *Shah,* 67 S.W.3d at 842; *Earle v. Ratliff,* 998 S.W.2d 882, 889 (Tex.1999); *Morrison v. Chan,* 699 S.W.2d 205, 207 (Tex.1985). The restriction is unreasonable if it makes a plaintiff's remedy by due course of law contingent on an impossible condition, and being required to file suit before having a reasonable opportunity to learn of the alleged injury is an impossible condition. *See, e.g., Nelson v. Krusen,* 678 S.W.2d 918, 921 (Tex.1984) (discussing how requiring a plaintiff whose injuries are not discoverable during the limitations period to nonetheless sue during the limitations period is equivalent to an impossible condition); *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex.1985) (discussing how article 4590i, section 10.01 cannot operate to cut off a cause of action before the plaintiff knew of the wrong's existence); *Sax,* 648 S.W.2d at 667 (discussing how insurance code section 5.82 [the predecessor to article 4590i] cannot operate to make a minor's right to redress contingent on his parents' timely filing suit). In other words, the open courts provision is violated only when a statute requires a plaintiff to do the impossible—to sue before having any reason to know they should sue. *See Krusen,* 678 S.W.2d at 923.

■ Appellees urge us, however, to apply a different requirement to Boyd's open courts challenge. Appellees contend that to raise a genuine issue of material fact concerning application of the open courts provision, Boyd was not required to establish that she lacked a reasonable opportunity to discover the alleged wrong and to bring suit before the limitations period expired, but instead that "it was impossible or exceedingly difficult" for her to discover the wrong during limitations. Appellees cite *O'Reilly v. Wiseman* for this proposition. 107 S.W.3d 699, 706 (Tex.App.-Austin 2003, pet. denied).[5] We hold that no distinction, other than semantical, exists between an impossible-or-exceedingly-difficult-to-discover-the-wrong open courts requirement and the more traditional no-reasonable-opportunity-to -discover-the-wrong-before-limitations-expired requirement.

We decline Appellees' invitation to apply the impossible-or-exceedingly-difficult-to-discover-the-wrong open courts requirement mentioned in *O'Reilly* to the present facts for four main reasons. The first two reasons are straightforward and will be discussed together. First, *O'Reilly* itself recognizes that the two requirements are the same: the long-used reasonable-opportunity-to-discover-the-wrong-before-limitations-expired requirement was simply renamed by the *O'Reilly* court as the impossible-or-exceedingly-difficult-to-dis-

---

**5.** Because Appellees premise most of the arguments in their briefs on the *O'Reilly* opinion, we address it in detail.

cover-the-wrong requirement for purposes of clarity. *Id.* at 706 n. 10 ("We will use the language 'impossible or exceedingly difficult to discover the wrong' rather than 'reasonable opportunity to discover the wrong' in describing what a plaintiff must show in an open-courts challenge."). Second, because Mrs. O'Reilly learned of her cancer diagnosis while four months remained before limitations expired, it was not exceedingly difficult for her to discover the wrong before limitations ran nor did she lack a reasonable opportunity to discover the wrong before limitations ran. *Id.* at 708. Thus, Appellees' contention that, under O'Reilly, a substantive distinction exists between an impossible-or-exceedingly-difficult-to-discover-the-wrong requirement and the traditional reasonable-opportunity-to-discover-the-wrong-before-limitations-expired requirement is not factually supported. *Id.* at 708; *see also Radloff v. Dorman,* 924 S.W.2d 416, 419 (Tex.App.-Amarillo 1996, writ dism'd by agr.) (holding that absent evidence raising issue that four months was not reasonable time to bring suit, plaintiffs who learned of injury with four months remaining in limitations period failed to rebut defendant's established affirmative defense of limitations).

Third, Appellees argue that, based on *O'Reilly,* the supreme court's opinion in *Hellman v. Mateo,* 772 S.W.2d 64, 66 (Tex. 1989) (op. on reh'g) is an anomaly and is no longer good law; we cannot agree. Appellees claim that *Hellman* is no longer good law because in *Hellman* the supreme court placed the burden on the defendant doctor to prove that the plaintiff should have known of her injury within limitations, while the supreme court's more recent decision in *Shah v. Moss* places the burden of proof on this issue on the plaintiff. The supreme court in *Hellman* did not, however, misplace the burden of proof, nor is *Hellman* inconsistent with *Shah.* In *Hell-*

*man,* the plaintiff pleaded and raised a genuine issue of material fact as to whether she had a reasonable opportunity to learn of her injury during limitations. 772 S.W.2d at 66 ("Having determined that Hellman alleged and expressly presented the facts [i.e., summary judgment evidence] necessary to challenge the constitutionality of article 4590i, we must now consider whether [the defendant] . . . conclusively established that there is no genuine issue of material fact concerning the time when Hellman . . . should have discovered . . . the injury"). Thus, Hellman satisfied her initial summary judgment burden of pleading and proof on her open courts challenge; this initial burden is the same burden discussed in *Shah. Shah,* 67 S.W.3d at 846–47 (recognizing that "it was [the plaintiff's] burden to raise a fact issue demonstrating that he did not have a reasonable opportunity to discover the alleged wrong before the limitations period expired so that the open courts guarantee applies"). After recognizing that Hellman had satisfied her summary judgment burden of raising a fact issue demonstrating that she did not have a reasonable opportunity to discover the alleged wrong before the limitations period expired so that the open courts guarantee applied, the supreme court then simply noted that in light of Hellman's open courts pleading and summary judgment evidence, the defendant was not entitled to summary judgment on limitations unless he conclusively negated this matter in avoidance; that is, conclusively established that Hellman had a reasonable opportunity to discover the alleged wrong. *Hellman,* 772 S.W.2d at 66. Thus, the initial burden of pleading and proof on the open courts challenge was placed on the plaintiff in *Hellman,* just as it was in *Shah.* We cannot agree with Appellees' contention that *Hellman* is bad law.

And finally, to the extent Appellees interpret *O'Reilly* as creating a substantive distinction between the impossible-or-exceedingly-difficult-to-discover-the-wrong open courts requirement and the reasonable-opportunity-to-disc over-the-wrong-before-limitations-expired requirement, the distinction is premised upon the perception that the supreme court at one time abandoned its historic two-pronged open courts analysis—that to establish an open courts violation, a plaintiff must show (1) that he has a well-recognized common-law cause of action that is being statutorily restricted and (2) that the restriction is unreasonable or arbitrary when balanced against the legislature's actual purpose in enacting the statute—then moved to an impossible-or-exceedingly-difficult-to-discover-the-wrong test, and then moved again back to its forgotten two-prong balancing test. 107 S.W.3d at 706–07.

▆▆▆▆ We cannot agree that the Texas Supreme Court previously departed from its well-established, two-pronged open courts analysis. *See, e.g., Owens Corning,* 997 S.W.2d at 573–74 (applying two-prong test in facial open courts challenge to Texas's borrowing statute); *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 508 (Tex.1997) (applying two-prong test in as-applied open courts challenge to statutorily granted immunity to hospital allegedly cutting off negligent credentialing claim); *Diaz v. Westphal,* 941 S.W.2d 96, 100 (Tex.1997) (applying two-prong test in as-applied open courts challenge to wrongful death and survival actions statute of limitations); *Weiner v. Wasson,* 900 S.W.2d 316, 318–19 (Tex. 1995) (applying two-prong test in as-applied open courts challenge to article

4590i's statute of limitations application to minors); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990) (applying two-prong test in as-applied open courts challenge to wrongful death statute of limitations); *Lucas,* 757 S.W.2d at 690 (applying two-prong test in as-applied open courts challenge to article 4590i's damage caps); *LeCroy,* 713 S.W.2d at 341 (applying two-prong test in open courts challenge to statute requiring filing fee that was paid into state's general revenue fund); *Lebohm v. City of Galveston,* 154 Tex. 192, 195–96, 275 S.W.2d 951, 955 (1955) (op. on reh'g) (applying two-prong test in facial open courts challenge to legislatively approved city charter provision exempting city from all liability for injuries caused by defective streets); *Hanks v. City of Port Arthur,* 121 Tex. 202, 205, 48 S.W.2d 944, 945 (1932) (applying two-prong test in facial open courts challenge to ordinance exempting Port Arthur from all liability for injuries caused by defective streets). Indeed, departure from the two-prong test is unlikely because it is dictated by fundamental constitutional law. Fundamental constitutional law requires a party claiming a denial of due process because particular legislation abrogates one of its constitutional rights, here the open courts guarantee, to establish (1) the legislative encroachment and (2) that the encroachment is arbitrary or unreasonable when balanced against the purpose of the legislation. *See, e.g., Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (recognizing Federal Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them);[6] *accord Mayhew v.*

---

6. The Texas Constitution's due course of law open courts provision provides rights in addition to those provided by the Fourteenth Amendment of the United States Constitution.

*Lucas,* 757 S.W.2d at 690; *Sax,* 648 S.W.2d at 661. The Fourteenth Amendment provides the floor for Texas citizen's due process rights while the Texas Constitution provides the ceil-

*Town of Sunnyvale,* 964 S.W.2d 922, 938 (Tex.1998) (explaining that "[a] generally applicable zoning ordinance will survive a substantive due process challenge if it is designed to accomplish an objective within the government's police power and if a rational relationship exists between the ordinance and its purpose"), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999); *Parvin v. Dean,* 7 S.W.3d 264, 276 (Tex.App.-Fort Worth 1999, no pet.) ("The objective of due process is to restrain the government from arbitrary and unreasonable exercises of power and to prevent excessive governmental encroachment."). Thus, we cannot agree with Appellees' suggestion that a distinction exists in the open courts test employed by the Texas Supreme Court over the years that would trigger a modification of the traditional open courts analysis. We examine the summary judgment evidence before us to determine whether Appellees conclusively established the affirmative defense of limitations, and if so, whether Boyd raised a genuine issue of material fact that she had no reasonable opportunity to discover Appellee's alleged wrongs and her alleged injury prior to the expiration of article 4590i, section 10.01's limitations period.

## IV. SUMMARY JUDGMENT EVIDENCE

Viewing only the summary judgment evidence favorable to Boyd, and taking that evidence as true, the summary judgment record shows that Boyd had office visits with Appellees on specific dates and that she claims that Appellees were negligent on those dates.[7] Boyd began seeing Dr. Kallam, a gynecologist, in October 1995. Boyd considered Dr. Kallam to be her primary doctor; accordingly, she saw him for minor ailments and for yearly well-woman examinations. Boyd saw Dr. Kallam for well woman examinations on December 4, 1996 and November 16, 1998. During both of these examinations Dr. Kallam performed a rectal examination and took a fecal occult stool sample, and these studies showed no evidence of blood. Due to a change in her health insurance, Boyd began seeing Dr. Thompson in October 1999. She designated Dr. Thompson as her primary care physician and saw him for yearly physical examinations, but she also continued to see Dr. Kallam and his partner, Dr. Finke, for well woman checkups. She saw Barbara Jeffries, R.N., N.P., a nurse practitioner with Dr. Kallam and Dr. Finke's office, for a well woman examination on March 3, 2000. Nurse Jeffries obtained a fecal occult stool sample, and again, it was negative. Neither Dr. Kallam nor Dr. Finke saw Boyd during this examination, but Dr. Finke read over and signed off on Nurse Jefferies' examination.[8]

According to Boyd, beginning in 1998, during each of the well woman and physical examinations, she complained of rectal bleeding and, on occasion, constipation.

---

ing. *LeCroy,* 713 S.W.2d at 338. Thus, federal due process analysis is relevant as articulating a due process floor, even though the Texas Constitution's open courts provision provides more due process protection.

7. Boyd claims Appellees were negligent on the following dates: Dr. Kallam—December 4, 1996 and November 16, 1998; Dr. Thompson—October 25, 1999 and January 12, 2000; Dr. Finke and Nurse Jefferies—March 3, 2000.

8. Boyd's pleadings allege that Dr. Finke was negligent in her approval of and supervision of Nurse Jefferies' negligent misdiagnoses or misinterpretation of Boyd's rectal bleeding and symptoms as hemorrhoids, including conveying to Boyd that she suffered only from this nonthreatening condition. Boyd's pleadings also allege that Dr. Finke was negligent in failing to order diagnostic testing.

Each of the Appellees examined Boyd and assured her that her rectal bleeding stemmed from her hemorrhoids. According to Boyd, when she saw Dr. Kallam on February 21, 2001, he "not only did a digital rectal examination, but also used . . . an Anoscope" to examine her rectum and informed Boyd that she had "a little fissure present . . . that was causing the bleeding." Despite Boyd's continued complaints, Appellees attributed Boyd's rectal bleeding to hemorrhoids. During a February 12, 2002 office visit with Dr. Thompson, Boyd demanded a colonoscopy, Dr. Thompson ordered one, and it revealed Boyd's stage IV colorectal cancer.

Boyd filed numerous expert affidavits as summary judgment evidence. Boyd's own affidavit explains that the doctor who performed her colonoscopy told her that the large, cancerous tumor in her sigmoid colon or some precursor abnormality, probably in the form of an adenomatous polyp, had been present and growing in Boyd's colon since 1996. The thirty-page affidavit of Rhett Fredric, M.D., an oncologist, likewise explained as follows:

> Had Ms. Boyd been properly screened prior to March 2000, or properly worked up beginning in March 2000, some abnormality would have been detectable, probably an adenomatous polyp. If an adenomatous polyp or cancer had been detected by screening, colonoscopy or lower GI studies, standard medical care would have been to remove the polyp or cancer, or biopsy the abnormality, and then institute surgery and/or chemotherapy if the tumor was malignant. The delay in diagnosing Ms. Boyd's tumor occurred from 1996 to 2002, and resulted in, at a minimum, an approximate two[-]year delay in diagnosis. This delay in diagnosis in reasonable medical probability, based upon the medical literature, resulted in Ms. Boyd going

from a Stage II or early Stage III to a Stage IV.

Boyd also filed expert affidavits opining that each of the Appellees was negligent and that their negligence proximately caused her injuries.

## V. APPLICATION OF STANDARDS OF REVIEW TO SUMMARY JUDGMENT EVIDENCE

### A. Boyd's Negligence Allegations

Boyd alleges two general categories of negligence against the doctors and Nurse Jefferies in this case. First, she alleges that they were all negligent by failing at each visit after she turned fifty years old to recommend that she undergo colorectal cancer screening. Second, she alleges that they were all negligent by misdiagnosing or misinterpreting her rectal bleeding and symptoms as hemorrhoids and telling her that she suffered only from this nonthreatening condition, by not performing diagnostic testing concerning her rectal bleeding, and by failing to diagnose her cancer.

### B. Appellees Conclusively Established the Affirmative Defense of Limitations

■■■ Article 4590i, section 10.01 provides that notwithstanding any other law, a person may not bring a health care liability claim unless the person files the action within two years from the occurrence of the tort. TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01. The limitations period provided in article 4590i, section 10.01 runs from one of three possible dates: (1) the date of the tort; (2) the last date of the relevant course of treatment; or (3) the last date of the relevant hospitalization. *Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex.1998). Although the statute specifies three possible dates on which the statute of limitations may start running, when the precise date of the tort is known, the statutory two-year period begins on that date. *See Earle*, 998 S.W.2d at 886; *Hu-*

*sain,* 964 S.W.2d at 919; *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987).

■ Here, Boyd claims that Appellees were negligent on the specific dates when one of them saw her and did not perform or order colorectal cancer screening because of her age, misdiagnosed her rectal bleeding as hemorrhoids, and failed to perform or order diagnostic testing: December 4, 1996, November 16, 1998, October 25, 1999, January 12, 2000, and March 3, 2000. Because the precise dates of the alleged torts by Appellees are known, the statutory limitations period began on those dates and expired two years later.[9] *See Earle,* 998 S.W.2d at 886; *Husain,* 964 S.W.2d at 919; *Kimball,* 741 S.W.2d at 372; *Karley v. Bell,* 24 S.W.3d 516, 521 (Tex.App.-Fort Worth 2000, pet. denied); *Voegtlin,* 977 S.W.2d at 810–11. Boyd did not file suit until August 30, 2002. Thus, Appellees conclusively established their affirmative defense of limitations as to Boyd's claims of negligence occurring prior to August 30, 2000, and the burden shifted to Boyd to raise a genuine issue of material fact demonstrating that she did not have a reasonable opportunity to learn of Appellees' alleged wrongs or her alleged injury before limitations expired. *See Shah,* 67 S.W.3d at 836; *Earle,* 998 S.W.2d at 889; *see also Clear Creek Basin Auth.,* 589 S.W.2d at 678 (holding that when movant establishes right to summary judgment burden shifts to nonmovant to raise issue of fact precluding judgment).

### C. Open Courts Analysis

#### 1. No Fact Issue on Negligent–Failure–to–Screen–Based–on–Age Claims

■ Boyd produced summary judgment evidence establishing that the standard of care requires colorectal cancer screening to be performed on all patients over fifty years old. She complains that Appellees breached this standard of care on multiple occasions by failing to order colorectal cancer screening on her after she became fifty years old. Boyd knew, however, at the time of each of her office visits with Appellees that she was fifty years old and that they had failed to order colorectal cancer screening. *See Jennings v. Burgess,* 917 S.W.2d 790, 794 (Tex.1996) (holding negligent referral claim barred because plaintiff knew at each visit that defendant did not refer her to plastic surgeon). She produced no summary judgment evidence demonstrating that she did not have a reasonable opportunity to learn of Appellees' failure to order age-based screening for colorectal cancer. *See Shah,* 67 S.W.3d at 846–47 (holding plaintiff failed to raise fact issue demonstrating that he did not have reasonable opportunity to discover alleged negligent performance of his back surgery). Thus, we hold that Boyd has failed to raise a genuine issue of material fact that she did not have a reasonable opportunity to learn of the alleged wrong—the failure to perform colorectal cancer screening simply because she was more than fifty years old—within the limitations period for each of her office visits with Appellees occurring prior to August 30, 2000.[10] Because the failure to conduct colorectal cancer screening based on age is the only negligence claim Boyd alleges with respect to the December 4, 1996 visit with Dr. Kallam, the trial court properly concluded that Boyd's negligence

9. The tolling provision of article 4590i, section 4.01 is not at issue here.

10. Boyd's contentions that Appellees should have ordered colorectal cancer screening for reasons other than that she was over fifty years old, i.e., based on her symptoms, fall within her negligent failure to diagnose claims and negligent failure to order diagnostic testing claims. These claims are discussed in section V.C.2 *infra.*

claim concerning this visit is barred by the statute of limitations.

### 2. Fact Issues Exist on Negligent Failure to Diagnose Claims, Misdiagnosis Claims, and Negligent Failure to Order Diagnostic Testing Claims

■ According to Boyd, whose testimony we must take as true for purposes of this summary judgment proceeding, beginning in 1998, she complained to Appellees on each office visit of rectal bleeding and occasional constipation. Boyd claims that Appellees repeatedly told her that she suffered from hemorrhoids and attributed her symptoms to hemorrhoids. Boyd's experts opined in their affidavits that changes in bowel habits and rectal bleeding are possible symptoms of colorectal cancer, that the standard of care required Appellees to take steps to "rule out a possible lower bowel etiology of her symptoms," and that their failure to do so constituted negligence.

Boyd's summary judgment evidence viewed in the light most favorable to her raises an issue of fact concerning whether she had a reasonable opportunity to discover Appellees' alleged wrongs or her alleged injury.[11] *See Hellman,* 772 S.W.2d at 65–66 (holding plaintiff alleging pathologist negligently diagnosed lymph node as benign raised fact issue concerning whether she had reasonable opportunity to discover her injury during limitations); *Thompson v. Pate,* 69 S.W.3d 743, 748 (Tex.App.-El Paso 2002, no pet.) (holding plaintiff who had gallbladder removal surgery and was told gallbladder had been removed raised fact issue concerning whether she had reasonable opportunity to learn gallbladder had not been removed when she was symptom free for five years after surgery); *Gagnier v. Wichelhaus,* 17 S.W.3d 739, 744 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) (holding plaintiff who was told she no longer had an IUD and underwent years of fertility treatment raised fact issue concerning whether she had no reasonable opportunity to learn that IUD was still in her uterus during limitations); *Del Rio v. Jinkins,* 730 S.W.2d 125, 126–27 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.) (holding plaintiff who alleged negligence in performing radiation for testicular cancer raised issue of fact concerning whether he had a reasonable opportunity to discover that his stomach pain stemmed from alleged negligent treatment for testicular cancer). Boyd allegedly repeatedly reported rectal bleeding and occasional constipation and, according to her testimony, was repeatedly told that she was suffering only from hemorrhoids. The difference between this case and the cases relied upon by Appellees is that Boyd's hemorrhoids diagnosis made it impossible for her to learn of Appellees' alleged wrongs, or her alleged injury, colon cancer: doctors attributed her symptoms to hemorrhoids, not cancer. *Accord, Thompson,* 69 S.W.3d at 748 (believing plaintiff's gallbladder had been removed, doctors attributed her symptoms to other parts of her gastrointestinal system). In the cases relied upon by Appellees, the plaintiffs had some known injury or medical procedure and could or should have related their symptoms to the prior injury or procedure to learn of the present alleged wrong. *See, e.g., Batten v. Hunt,* 18 S.W.3d 235, 239

---

11. The parties do not draw a distinction, if one exists, between a "reasonable opportunity to discover *the alleged wrong* " and a "reasonable opportunity to discover *the alleged injury,*" and none is necessary in this case because Boyd's summary judgment evidence raises genuine issues of material fact concerning both. *See, e.g., Shah,* 67 S.W.3d at 842 (alleged wrong); *Earle,* 998 S.W.2d at 889 (alleged wrong); *Krusen,* 678 S.W.2d at 921 (alleged injury).

(Tex.App.-Austin 1999, pet. denied); *Ericson v. Roberts*, 910 S.W.2d 608, 613 (Tex. App.-Tyler 1995, no writ).

In *Batten*, the plaintiff's open courts challenge did not save his 1997 claim against Dr. Hunt alleging the negligent failure to recommend follow-up testing after the 1989 removal of a precancerous tumor from the plaintiff's colon because the plaintiff produced no summary judgment evidence that he ever saw Dr. Hunt between the 1989 surgery and the 1997 suit. 18 S.W.3d at 239. The court of appeals also noted, "Even if it were unreasonable to require [the plaintiff] to know in May 1989 that Hunt should have told him to have follow-up examinations, [the plaintiff's] continuing symptoms certainly provided the impetus to seek further examinations well before 1996." *Id.* Thus, following the removal of a precancerous colon tumor, the plaintiff in *Batten* suffered for several years from unexplained, continuing symptoms related to colon cancer. *Id.* Likewise, in *Ericson*, the plaintiff's open courts challenge did not save his claim that Dr. Roberts negligently performed a June 14, 1990 circumcision. 910 S.W.2d at 613. From the date of the surgery, Mr. Ericson experienced pain, discomfort, and redness. *Id.* Thus, Mr. Ericson possessed a reasonable opportunity to discover the alleged wrong within limitations. *Id.*

Here, unlike in *Batten* and *Ericson*, on the dates Appellees examined Boyd, and thereafter throughout the limitations period as to those visits, Appellees allegedly provided Boyd with a benign explanation for her rectal bleeding: hemorrhoids. Viewing the summary judgment evidence in the light most favorable to Boyd, she, unlike Mr. Batten and Mr. Ericson, was not aware during limitations of symptoms she reasonably should have attributed to the wrong she now alleges. The summary judgment evidence at least raises a genuine issue of material fact concerning whether Boyd reasonably should have disbelieved two doctors' hemorrhoids diagnosis and attributed her symptoms to some other cause, perhaps colorectal cancer, which she would have had to do in order to learn of her cancer within limitations.

Appellees also claim that Boyd had a reasonable opportunity to learn of her cancer and of their alleged wrongs within the limitations period because in a January 16, 2001 office visit with Dr. Thompson, he gave her a take-home fecal occult blood test. Viewing the summary judgment evidence in the light most favorable to Boyd, she took the test home and read the directions.[12] The directions told users not to take the test during a menstrual cycle, if they were suffering from bleeding hemorrhoids, or if they had cuts on their hands. The directions stated that bleeding hemorrhoids would render the test inaccurate. Boyd claims that after reading the directions, because she was told she had bleeding hemorrhoids, she called Dr. Thompson's office and was told not to take the test because it would be inaccurate and that Dr. Thompson would call her if she was to do anything different. Appellees claim that if Boyd had completed this test, she would have learned of her cancer. We are required to take Boyd's affidavit testimony as true. *See, e.g., Am. Tobacco Co.*, 951 S.W.2d at 425. Taking as true Boyd's statements that Dr. Thompson's office told her not to take the test, Appellees' argument fails. Boyd cannot be faulted for following a doctor's instructions—that is, we cannot say that Boyd had a reasonable opportunity to learn of Appellees' alleged wrongs or to learn of her cancer if only she

12. Because Appellees moved for summary judgment strictly on limitations grounds, we consider the summary judgment evidence as it pertains to only that issue.

would have disregarded instructions given to her by her doctor's office.

Appellees also claim that Boyd should have known of her cancer because she is a nurse and because her family has a history of colon cancer. The summary judgment record before us reflects that Boyd is a psychiatric nurse and that she was concerned about her rectal bleeding, so she discussed it with her doctors. One of Boyd's expert's affidavit provides as follows:

> Furthermore, both Dr. Kallam and Dr. Thompson deny knowing that Ms. Boyd had colon cancer or other serious disease prior to April 2002. If two doctors did not know about a serious disease in a patient after seeing a patient multiple times, it is absurd to hold a patient to a higher level of knowledge in this regard. Accordingly, Ms. Boyd had no reason to seek a third opinion or institute additional investigation into the cause of her complaints on her own until she did in 2002.

Appellees have cited no authority for the proposition that we should hold a patient who is a nurse or a patient with a family history of a certain type of injury to the level of knowledge of the doctor caring for the patient. Nor have we located any such authority. Moreover, it seems illogical to hold that Boyd, a psychiatric nurse, had a reasonable opportunity to learn of her colon cancer when Appellees, who possessed superior medical training concerning cancer and who also possessed the same information as Boyd concerning her family history, did not learn of her cancer. Consequently, we decline to hold that as a matter of law Boyd's psychiatric nursing experience and family history of colon cancer somehow provided her with a reasonable opportunity to learn of her cancer or of Appellees' alleged wrongs.

Appellees further argue that Boyd possessed a reasonable opportunity to learn of her cancer because she could have demanded a colonoscopy—which she ultimately did, and which led to her colorectal cancer diagnosis—sooner. We decline to hold that a patient's ongoing ability to request or demand any diagnostic test translates to a reasonable opportunity to learn of an undiagnosed medical condition. To hold otherwise would put a patient in charge of her own medical care, demanding for herself whatever diagnostic testing she desired.

Finally, applying the *Sax* balancing test to the present facts, because Boyd's claims against Appellees for negligence occurring after August 30, 2000, remain pending in the trial court, application of article 4590i, section 10.01's limitations provision to Boyd's pre-August 30, 2000 negligent failure to diagnose claims, misdiagnosis claims, and negligent failure to order diagnostic testing claims is arbitrary when balanced against the purpose of the statute. Application of the statute of limitations to these claims does not dispose of Boyd's entire lawsuit, does not prevent Appellees from possible exposure to liability on Boyd's timely filed claims, and therefore does not appear to promote the statute's purpose of lowering medical malpractice insurance premiums. *Compare Shah*, 67 S.W.3d at 846 (application of limitations provision barred all plaintiff's claims); *Earle*, 998 S.W.2d at 889 (same); *Batten*, 18 S.W.3d at 239 (same); *Ericson*, 910 S.W.2d at 613 (same).

Having concluded that, viewing the summary judgment evidence in the light most favorable to Boyd, a fact issue exists concerning whether she had a reasonable opportunity to discover her injury and Appellees' alleged wrongs—the failure to diagnose her cancer, the misdiagnosis that her symptoms were attributable to hemor-

rhoids, and the failure to order diagnostic testing based on her symptoms—during the limitations periods for the November 16, 1998, October 25, 1999, January 12, 2000, and March 3, 2000 office visits, we hold that the Texas Constitution's open courts guarantee precludes application of article 4590i, section 10.01's limitations provision to cut off these claims as a matter of law.[13] We sustain Boyd's first issue as to her negligent failure to diagnose claims, misdiagnosis claims, and negligent failure to order diagnostic testing claims. We overrule Boyd's first issue as to her negligent failure-to-screen-based-on-age claims.

### 3. Boyd Filed Suit Within a Reasonable Time

In her second issue, Boyd claims that she filed suit against Appellees within a reasonable time after learning of her alleged injury. A plaintiff who raises a genuine issue of material fact as to the applicability of the open courts provision to avoid limitations may nonetheless fail to obtain relief under the open courts provision if he does not use due diligence and sue within a reasonable time after learning about the alleged wrong. *See Shah,* 67 S.W.3d at 847 (holding unexplained seventeen-month delay between learning of injury and filing suit unreasonable); *Pech v. Estate of Tavarez,* 112 S.W.3d 282, 287 (Tex.App.-Corpus Christi 2003, no pet.) (holding fourteen-month delay unreasonable when attributable to family matters rather than investigation of and filing of claim); *Thompson,* 69 S.W.3d at 749 (holding seventeen-month delay unreasonable); *Fiore v. HCA Health Servs. of Tex., Inc.,*

915 S.W.2d 233, 237 (Tex.App.-Fort Worth 1996, writ denied) (holding thirteen-month delay unreasonable); *LaGesse v. PrimaCare, Inc.,* 899 S.W.2d 43, 47 (Tex.App.-Eastland 1995, writ denied) (holding twelve-month delay excessive where only reasons given for delay was attorney's busyness). A reasonable delay is allowed for investigation, preparation and filing the claim after the injury is discovered. *Gagnier,* 17 S.W.3d at 745; *DeRuy v. Garza,* 995 S.W.2d 748, 752 (Tex.App.-San Antonio 1999, no pet.).

Here, Boyd filed suit approximately four months after she learned of her injury—colorectal cancer. We have not located, and Appellees have not cited, any authority for the proposition that Boyd's four-month delay in filing suit is unreasonable. We sustain Boyd's second issue.

### VI. CONCLUSION

Having sustained Boyd's second issue and her first issue in part, we reverse the trial court's partial summary judgment for Appellees on Boyd's negligent failure to diagnose claims, misdiagnosis claims, and negligent failure to order diagnostic testing claims based on the November 16, 1998, October 25, 1999, January 12, 2000, and March 3, 2000 office visits. We remand those claims to the trial court.

We affirm the trial court's partial summary judgment concerning Boyd's negligent-failure-to-screen-based-on-age claims and concerning the December 4, 1996 office visit because the negligent failure to screen based on age is the only negligence alleged to have occurred at that office visit. We also affirm the trial court's partial

---

**13.** Although Boyd has raised a fact issue in this summary judgment proceeding on the reasonable-opportunity-to-discover-the-wrong-before-limitations-expired open courts requirement, she still bears the burden of proof on this issue at trial. *See Edgewood Indep. Sch. Dist. v. Meno,* 917 S.W.2d 717, 725 (Tex.1995) (recognizing that any party alleging unconstitutionality of statute has evidentiary burden of proving all facts necessary to show unconstitutionality).

summary judgment for Family Healthcare Associates on Boyd's direct negligence theories of recovery.