Melvin ERICSON and Gail Ericson, Appellants,

v.

Dr. Steven B. ROBERTS, M.D., Dr. Steven B. Roberts, M.D. and Associates and Tyler Urology Associates, Appellees.

No. 12–94–00134–CV.

Court of Appeals of Texas, Tyler.

Oct. 31, 1995.

Brian R. Arnold, Dallas for appellants.

Douglas McSwane, and Michael E. Starr, Tyler for appellees.

HOLCOMB, Justice.

This is an appeal from a take-nothing judgment in a medical malpractice case arising out of a surgical procedure. Melvin and Gail Ericson filed suit against Dr. Steven Roberts, M.D., and Tyler Urology Associates alleging that Dr. Roberts negligently performed a circumcision operation. The court found that Dr. Roberts and Tyler Urology Associates were entitled to summary judgment as a matter of law and granted a take-nothing judgment against the Ericsons. In one point of error, the Ericsons contend that the court erred when it held that their malpractice claim was barred by the statute of limitations. We will affirm.

On May 5, 1990, Melvin Ericson was referred to Dr. Roberts by his family doctor because he had been experiencing pain in his penis during intercourse. After attempts to treat the symptoms with medication were unsuccessful, Dr. Roberts performed a circumcision operation on June 14, 1990. After the operation, Dr. Roberts consulted with Mr. Ericson four times within a six-week period and he appeared to be healing normally. On June 3, 1991, Mr. Ericson returned to Dr. Roberts' office complaining that he had redness on his penis during intercourse and Dr. Roberts gave him a prescription for cream to relieve his discomfort. Within weeks, Mr. Ericson took his attorney to Dr. Roberts' office. Dr. Roberts referred Mr. Ericson to Dr. Joseph Corriere, Jr., M.D. in Houston, Texas and agreed to bear the expense of another surgery if one was necessary to correct his malady.

On October 4, 1991, Dr. Corriere examined Mr. Ericson and sent Dr. Roberts a written report. In the report, Dr. Corriere concluded that Mr. Ericson had a "webbed penis", which was a skin deformity that could have been a congenital defect or could have been the result of the circumcision that Dr. Roberts had performed. Shortly thereafter, Dr. Roberts wrote Dr. Corriere a letter thanking

him for his evaluation. On December 23, 1992, Dr. Corriere performed the second surgery on Mr. Ericson at the Texas Medical Center in Houston. The cost of the surgery, as well as Dr. Corriere's charges were paid by Dr. Roberts' insurance carrier.

On January 21, 1993, the Ericsons sent Dr. Roberts notice of their intent to file a malpractice claim. *See* TEX.REV.CIV.STAT.ANN. art. 4590i § 4.01 (Vernon Supp.1994). On June 15, 1993, the Ericsons filed suit against Dr. Roberts and Tyler Urology Associates alleging that Dr. Roberts negligently removed too much foreskin from Mr. Ericson's penis, which caused inflammation and disfigurement. They also claimed their sexual relationship was impaired because they had not been able to have intercourse without experiencing significant pain. Dr. Roberts filed a motion for summary judgment asserting that the Ericsons' malpractice claim was barred by the statute of limitations governing medical liability claims. TEX.REV.CIV. STAT.ANN. art. 4590i § 4.01 (Vernon Supp. 1994).

In defense of the claim against him individually, Dr. Roberts attached to his motion an affidavit outlining the dates that Mr. Ericson was in his office for medical treatment. According to his affidavit, the first medical treatment administered to Mr. Ericson occurred on May 5, 1990. Dr. Roberts then performed the circumcision on June 14, 1990, and on June 3, 1991 he prescribed cream to relieve redness and irritation. Dr. Roberts also attached testimonial excerpts from Mr. Ericson's deposition. In the deposition, Mr. Ericson attributes his injuries to a "rush job" that Dr. Roberts performed on the circumcision, which resulted in too much skin being removed from his penis. Mr. Ericson admits that Dr. Roberts did not perform any act, or fail to perform any act that damaged him after the initial surgery. He made a similar statement in his answers to interrogatories. When asked to identify "specifically each and every complaint or allegation" that he had against Dr. Roberts, Mr. Ericson stated, "My feelings were that Dr. Roberts was put behind for my surgery by almost two hours, and this caused him to go too fast and remove more skin than necessary."

In defense of the claim against Tyler Urology Associates, Dr. Roberts attached an affidavit stating that the corporation was formed for the sole purpose of owning the office building. It also confirmed that Dr. Roberts was not an employee of Tyler Urology Associates; therefore, Tyler Urology Associates was not involved in the surgery that was the basis of the Ericsons' claim and did not provide any medical services to Mr. Ericson. The affidavit was uncontroverted.

In their response to Dr. Roberts' motion, the Ericsons attached the letter from Dr. Corriere to Dr. Roberts informing Dr. Roberts of his diagnosis of Mr. Ericson, and the letter from Dr. Roberts to Dr. Corriere thanking him for his assessment of Mr. Ericson's condition. They also attached excerpts from Mrs. Ericson's deposition which does not substantively contribute to the resolution of the issue at hand.

In the Ericsons' only point of error, they claim that the court erred, as a matter of law, when it granted summary judgment and dismissed with prejudice all of their claims against Dr. Roberts. They argue that their claims were not barred by the statute of limitations because Dr. Roberts' medical treatment continued up until December 23, 1992, when Mr. Ericson underwent the corrective surgery in Houston. They also argue that, because they did not realize that Mr. Ericson's medical problems were a result of the circumcision, the application of Section 10.01 to their case violated the "open courts provision" of the Texas Constitution.

Dr. Roberts argues that the court properly granted summary judgment because the Ericsons did not allege in their pleadings nor did they provide any controverting evidence that Dr. Roberts performed a negligent act after the circumcision. As a result, he concludes that the ascertainable date of the tort is June 14, 1990. As to the Ericsons' challenge of the constitutionality of the statute, Dr. Roberts points out that the Ericsons failed to make the constitutional challenges in their pleading. Even if they had adequately plead a constitutional violation, Dr. Roberts argues that the Ericsons were aware of the medical problem within two years of the circumcision; therefore, for a litigant to

challenge the open court's provision of the Texas constitution, the litigant would have to allege that it was impossible to know of the injury within two years. Here, Mr. Ericson was concerned that his body was not healing after the first surgical procedure was performed.

■ A defendant who moves for summary judgment has the burden of showing, as a matter of law, that no material issue of fact exists for the plaintiff's cause of action. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 166–67 (Tex.1987). When the basis of the summary judgment is the statute of limitations, the defendant has the burden to show from the record that the suit is barred by limitations. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). When the limitations are not apparent from the pleadings, the movant has the burden to show when the limitations commenced. *Lightfoot v. Weissgarber,* 763 S.W.2d 624, 626 (Tex.App.—San Antonio 1989, writ denied). In an appeal from a summary judgment, the standard of review and presumptions favor reversal of the judgment. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true and every reasonable inference must be indulged in favor of the non-movant. *Id.* The appellate court will not consider evidence that favors the movant's position unless it is uncontroverted. *Id.*

■ The statute of limitations for medical malpractice actions are governed by Section 10.01 of art. 4590i, which reads:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed....

TEX.REV.CIV.STAT.ANN. art. 4590i § 10.01 (Vernon 1994). Thus, a claim for medical malpractice begins to run from: 1) the occurrence of the breach or tort; 2) the date the health care treatment that is the subject of the claim is completed; or 3) the date the hospitalization for which the claim is made is completed. *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987); *Rowntree v. Hunsucker,* 833 S.W.2d 103, 105–06 (Tex.1992). Should a specific date for the negligent act be capable of being ascertained, that date is the one from which the limitations period begins to run. *Rowntree,* 833 S.W.2d at 104; *Kimball,* 741 S.W.2d at 372. To be timely, the event or occurrence giving rise to liability must have occurred less than two years and seventy-five days from the time suit was filed.[1]

■ In reviewing the summary judgment evidence and the pleadings, we must determine whether Dr. Roberts established as a matter of law that the Ericsons' malpractice claim was barred. *Delgado v. Burns,* 656 S.W.2d at 429. Citing *Chambers v. Conaway,* 883 S.W.2d 156 (Tex.1993) as authority, the Ericsons contend that limitations did not begin to run until Dr. Roberts completed his medical treatment of Mr. Ericson. They argue that Dr. Roberts continued to be involved in Mr. Ericson's care by maintaining contact with Dr. Corriere through September, 1992. We do not agree.

In attempting to pinpoint from the record the specific date in which "the breach or tort occurred", we conclude that the only complaint of negligence urged by the Ericsons against Dr. Roberts in their petition was his performance of the circumcision on June 14, 1990 and his failure to correct the improper surgery. The petition does not allege that Dr. Roberts negligently administered a course of treatment over a continuing period of time nor does it allege that Dr. Roberts was negligent by misdiagnosing Mr. Ericson's condition. In his deposition and his answers to interrogatories, Mr. Ericson confirmed that his complaint against Dr. Roberts was limited to the negligent manner in

---

1. TEX.REV.CIV.STAT.ANN. art 4590i § 4.01 (Vernon Supp.1992) provides for a tolling of the applicable statute of limitations upon giving proper notice for a period of 75 days following the giving of the notice. *Phillips v. Sharpstown General Hospital,* 664 S.W.2d 162, 165–66 (Tex.App.—Houston [1st Dist.] 1983, no writ).

which Dr. Roberts performed the circumcision. During his deposition, he stated:

Q. [BY DR. ROBERTS' ATTORNEY] Now what I want to make sure of this, you've indicated three other times you saw [Dr. Roberts]. Do you believe anything was done wrong during those times that hurt you?

A. [ERICSON] During those three times?

Q. Yeah.

A. No, just general exam.

Q. In other words, he didn't do anything or fail to do anything that you believe caused you any damages?

A. No.

Q. Your damages you believe were incurred at the time of surgery?

A. Yes, sir.

. . . . .

Q. I am assuming that given eight weeks after surgery, (the first surgery) that pretty much the communications between you and him stopped until June 9, 1991?

A. Yeah.

In *Law of Texas Medical Malpractice*, 11 HOUSTON LAW REVIEW 825, 834 (1974), the author discussed the issue of continuous treatment:

> Continuous treatment—is not held to be synonymous with the continuing patient-physician relationship. It embodies the treatment for that condition out of which the negligence is alleged to have arisen, continuing after the negligent act rather than the continuation of the general patient-physician relationship. While the termination of the treatment can be the time of accrual where there is no affirmative act of negligence and the injury results from the course of treatment, *the general rule is that the statutory period is not postponed when there is a specific act of negligence even though the physician continues to treat the patient as long as the condition is not aggravated by it.* Of course, if the plaintiff discovers the negligence or injury during the continuing treatment the rational for the theory ceas-

es to have meaning and the cause of action accrues and the statute commences to run at that point. *Id.,* at 834. (Emphasis ours)

. . . . .

The Ericsons point out that that Mr. Ericson returned with his attorney to Dr. Roberts' office almost a year after the circumcision complaining that he was still having problems during intercourse. At that time, they discussed a second surgery and agreed that Dr. Roberts would pay for corrective surgery should Mr. Ericson need it. However, this meeting did not constitute continuous treatment but merely a continuing physician/patient relationship. It did not extend the date from which the Ericsons' claim against Dr. Roberts would run. *See Rowntree v. Hunsucker,* 833 S.W.2d at 105–06. The purpose of the meeting was an attempt in an amicable manner to settle a potential claim. *Id.*

The Ericsons argue that *Rowntree v. Hunsucker* is applicable in this case; however, the facts in *Rowntree* pertained to a physician's failure to diagnose occluded arteries during a course of treatment. *Rowntree v. Hunsucker,* 833 S.W.2d at 105–06. The Ericsons do not allege misdiagnosis, failure to diagnose or failure to treat over a continuing course of treatment. Consequently, the Supreme Court's discussion in *Rowntree* regarding continuing courses of treatment are not applicable to this case.

The Ericsons also cite *Chambers v. Conaway,* 883 S.W.2d 156 (Tex.1993) in support of their position that we should construe the completion of treatment date as the date in which the doctor or the patient, by "words or conduct" terminates treatment of the relevant condition. In *Chambers,* the patient filed suit against her doctor alleging that he negligently *failed to diagnose* breast cancer over a course of treatment as her primary care physician. *Id.,* at 161. In a split decision, the Supreme Court held that Chambers saw his patient in a continuing course of treatment and his *failure to diagnose* was the "occurrence or tort" contemplated by Section 10.01. *Id.* However, the Supreme Court expressly stated that their holding was based upon the specific uncontroverted facts

before them and should not be interpreted to be a construction of the "continuing course of treatment" under Section 10.01. *Id.*

Furthermore, critical to the outcome of the case before us is the Ericsons' failure to complain of any negligent acts other than the surgical procedure that Dr. Roberts performed on June 14, 1990. They failed to include any allegations that Dr. Roberts misdiagnosed, failed to diagnose, failed to treat within a continuing course of treatment or failed to adequately provide follow-up care. In *Kimball v. Brothers,* the Supreme Court stated:

> "The provision in Section 10.01 that permits the limitations period to run "from the date the medical or health care treatment that is the subject of the claim ... is completed" contemplates a situation wherein the patient's injury occurs during a course of treatment for a particular condition and the only *readily ascertainable* date is the last day of treatment. Such a situation often arises in suits alleging misdiagnosis or mistreatment."

(Emphasis added)

*Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987).

■ Next, we address the Ericsons' argument that, because Mr. Ericson did not initially realize that his problems were a result of the circumcision in June of 1990, the application of Section 10.01 to his case violates the "open courts provision" of the Texas Constitution. TEX. CONST. art I, § 13. In support of their position, they argue that cases that preceded Section 10.01 have held that it is unconstitutional to apply a two year statute of limitations when the negligent act did not manifest itself until after two years from the injury.

By abolishing the "discovery rule" and enacting Section 10.01 of Article 4590i, the legislature intended to create a degree of certainty in the statute of limitations in medical malpractice cases. TEX.REV.CIV.STAT.ANN. art. 4590i § 10.01 (Vernon 1994). Attempting to alleviate what it perceived to be a malpractice insurance crisis in the state, the legislature adopted an absolute two-year statute of limitations regardless of when the injury was discovered. *Morrison v. Chan,*

699 S.W.2d 205, 208 (Tex.1985); *Nelson v. Krusen,* 678 S.W.2d 918, 920 (Tex.1984). While recognizing the possibility that well-founded claims might be barred in consequence, the legislature abrogated the discovery rule to encourage settlements and expedite adjudications while the claimant's recollections are fresh and documents are more easily accessible. *See Robinson v. Weaver,* 550 S.W.2d 18 (Tex.1977).

In the case before us, the Ericsons failed to allege the unconstitutionality of the statute in their pleadings. To challenge the constitutionality of art. 4590i, the Ericsons must allege that application of the two year limitation statute cut off their cause of action before they knew or should have known that a cause of action existed. *Hellman v. Mateo,* 772 S.W.2d 64, 66 (Tex.1989). The pleadings and summary judgment evidence demonstrate that Mr. Ericson was experiencing pain, discomfort and redness from the date of the June 14, 1990 surgical procedure. Application of the statute is only unconstitutional where it is impossible for the patient to know of the injury within two years. *Morrison v. Chan,* 699 S.W.2d at 208. To have a valid argument that Section 10.01 was unconstitutional, the Ericsons would have had to allege that they were not able to discover Mr. Ericson's injuries within two years from the date of the operation. Thus, the Ericsons' challenge to the constitutionality of the statute is without merit.

We hold that the summary judgment evidence and pleadings confirm as a matter of law that the Ericsons failed to file suit against Dr. Roberts within the statute of limitations. We further hold that the summary judgment evidence is uncontroverted that Tyler Urology Associates was not negligent.

The judgment of the trial court is **affirmed.**