COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-362-CV
  
  
SHARON 
BOYD                                                                     APPELLANT
  
V.
  
G. 
BYRON KALLAM, M.D.; MARY                                            APPELLEES
ANGELINE 
FINKE, M.D.; THE MEDICAL
CLINIC 
OF NORTH TEXAS, P.A.;
GERALD 
THOMPSON, M.D.; AND
FAMILY 
HEALTHCARE ASSOCIATES
 
 
------------
 
FROM 
THE 17TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        The 
trial court granted a partial summary judgment for Appellees on statute of 
limitations grounds in this medical malpractice case. Because Appellant Sharon 
Boyd pleaded the open courts provision of the Texas Constitution and also 
produced summary judgment evidence raising a genuine issue of material fact 
concerning whether she had a reasonable opportunity to learn of Appellees’ 
alleged wrongs or her alleged injury within the limitations period, we reverse 
the trial court’s partial limitations summary judgment for Appellees G. Byron 
Kallam, M.D., Mary Angeline Finke, M.D., and Gerald Thompson, M.D. on Boyd’s 
negligent failure to diagnose claims, misdiagnosis claims, and negligent failure 
to order diagnostic testing claims. We also reverse the trial court’s partial 
summary judgment for Appellees Family Healthcare Associates and the Medical 
Clinic of North Texas, P.A. on Boyd’s claims that these entities are 
vicariously liable for alleged negligence in failing to diagnose Boyd’s 
cancer, misdiagnosing her cancer, and failing to order diagnostic testing. We 
remand these claims to the trial court.
        We 
affirm the trial court’s partial summary judgment for Appellees G. Byron 
Kallam, M.D., Mary Angeline Finke, M.D., the Medical Clinic of North Texas, 
P.A., Gerald Thompson, M.D., and Family Healthcare Associates on Boyd’s 
failure-to-screen-based-on-age claims. We also affirm the trial court’s 
partial summary judgment for Family Healthcare Associates on Boyd’s direct 
negligence theories of recovery.[1]
II. Factual and 
Procedural Background
        An 
April 11, 2002 colonoscopy performed on Boyd revealed that she had stage IV 
colorectal cancer. The doctor who performed the colonoscopy told Boyd that she 
had a large, cancerous tumor in her sigmoid colon and that either this tumor or 
some precursor abnormality, probably in the form of an adenomatous polyp, had 
been present and growing in her colon since 1996. Boyd filed suit on August 30, 
2002, alleging that Appellees’ treatment of her, including treatment as early 
as 1996, was negligent in several respects, including failing to screen her for 
colorectal cancer after she became fifty years old, misdiagnosing her rectal 
bleeding as stemming from hemorrhoids, failing to diagnose her colorectal 
cancer, and failing to order diagnostic testing that would have revealed the 
cancer. Boyd pleaded that the open courts provision of the Texas Constitution 
precluded the application of the statute of limitations to her claims because 
she did not have a reasonable opportunity to learn of Appellees’ alleged 
wrongs or her alleged injury prior to the expiration of limitations. Appellees 
filed motions for partial summary judgment on the affirmative defense of 
limitations.[2] Appellees asserted that Boyd’s 
claims alleging negligence occurring more than two years before Boyd filed 
suit—that is, prior to August 30, 2000—were barred by the statute of 
limitations.[3]  Boyd responded, filing summary 
judgment evidence that she claims raises a genuine issue of material fact 
concerning whether she had a reasonable opportunity to discover the Appellees’ 
alleged wrongs or her alleged injury within the limitations period. The trial 
court granted Appellees’ motions for partial summary judgment and signed an 
order severing these claims. Boyd perfected this appeal.
III. Standard 
of Review
        A. 
Summary Judgment for Defendants Based on Limitations
        The 
statute of limitations is an affirmative defense. Tex. R. Civ. P. 94; Woods v. William 
M. Mercer, Inc., 769 S.W.2d 515, 517 (Tex. 1988). A defendant moving for 
summary judgment on a statute of limitations affirmative defense must prove 
conclusively that defense's elements. Shah v. Moss, 67 S.W.3d 836, 842 
(Tex. 2001); Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 530 (Tex. 
1997). In reviewing a trial court’s summary judgment, we resolve all doubts 
against the movant, and we view the evidence in the light most favorable to the 
nonmovants. KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 
S.W.2d 746, 748 (Tex. 1999). Additionally, in determining whether a disputed 
material fact issue exists, we take as true evidence favorable to the nonmovant. 
Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). 
Accordingly, the burden is on the movant to conclusively establish as a matter 
of law that limitations is a bar to the action. See Rowntree v. Hunsucker, 
833 S.W.2d 103, 104 (Tex. 1992); Lovato v. Austin Nursing Ctr., Inc., 113 
S.W.3d 45, 50-51 (Tex. App.—Austin 2003, pet. granted) (op. on reh’g). If a 
movant does establish that the statute of limitations bars the action, the 
nonmovant must then adduce summary judgment proof raising a fact issue in 
avoidance of the statute of limitations. Woods, 769 S.W.2d at 518; Zale 
Corp. v. Rosenbaum, 520 S.W.2d 889, 891 (Tex. 1975); see generally City 
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979) 
(holding that when movant establishes right to summary judgment, burden shifts 
to nonmovant to raise fact issue precluding judgment).
        B. 
Avoidance of Limitations Via Open Courts Provision
        A 
plea in confession and avoidance is one that avows and confesses the truth in 
the averments of fact, either expressly or by implication, but then proceeds to 
allege a new matter which tends to deprive the facts admitted of their ordinary 
legal effect, or to obviate, neutralize, or avoid them. Woods, 769 S.W.2d 
at 517. A plea in confession and avoidance must be raised by pleadings. Id. 
at 518. The party seeking to benefit from the plea in avoidance also bears the 
burden of proof on the matter because that party will generally have greater 
access to the facts necessary to establish the matter. Id.
        An 
assertion that the open courts provision of the Texas Constitution renders 
application of a statute of limitations to a particular plaintiff 
unconstitutional is a plea in confession and avoidance: confessing that the 
claims are brought outside the statutory limitations period, but asserting that 
the limitations statute, as applied to the particular plaintiff’s claims, is 
unconstitutional as violative of the Texas Constitution’s open courts 
provision. See Tex. R. Civ. P. 
94 (“In pleading to a preceding pleading, a party shall set forth . . . any 
other matter constituting an avoidance . . . .”). Thus, a plaintiff seeking to 
avoid a limitations summary judgment on the ground that application of the 
statutory limitations period violates the Texas Constitution’s open courts 
provision has the burden of pleading and proof on the as-applied 
unconstitutionality of the statute. Accord Walker v. Gutierrez, 111 
S.W.3d 56, 66 (Tex. 2003) (recognizing that party challenging statute has burden 
to prove unconstitutionality); S.W. Elec. Power Co. v. Grant, 73 S.W.3d 
211, 222 (Tex. 2002) (refusing to consider constitutional open-courts claim not 
pleaded in trial court); In re Doe 2, 19 S.W.3d 278, 284 (Tex. 2000) 
(recognizing that absent a pleading raising issue of unconstitutionality, trial 
court is generally without authority to reach the issue).
        A 
plaintiff raising an as-applied open courts challenge to the constitutionality 
of article 4590i, section 10.01 in response to a defendant’s summary judgment 
motion conclusively establishing the affirmative defense of limitations bears 
the burden of raising a fact issue showing no reasonable opportunity to discover 
the alleged wrong and to bring suit before the limitations period expired. Shah, 
67 S.W.3d at 846 (recognizing that “it was [the plaintiff’s] burden to raise 
a fact issue demonstrating that he did not have a reasonable opportunity to 
discover the alleged wrong before the limitations period expired so that the 
open courts guarantee applies”); Earle, 998 S.W.2d at 889 (recognizing 
that “plaintiff must raise a fact issue concerning the applicability” of the 
open courts provision to avoid summary judgment on limitations).[4]
        The 
open courts provision of the Texas Constitution provides, “All courts shall be 
open, and every person for an injury done him, in his lands, goods, person or 
reputation, shall have remedy by due course of law.” Tex. Const. art. I, § 13. The open 
courts provision specifically guarantees all litigants the right to redress 
their grievances—to use a popular and correct phrase, the right to their day 
in court. LeCroy v. Hanlon, 713 S.W.2d 335, 341 (Tex. 1986). The open 
courts provision acts as an additional due process guarantee granted in the 
Texas Constitution. See id. at 340-41; McGlothlin v. Cullington, 
989 S.W.2d 449, 452 (Tex. App.—Austin 1999, pet. denied), cert. denied, 
528 U.S. 1062 (1999); see also Sax v. Votteler, 648 S.W.2d 661, 664 (Tex. 
1983) (recognizing open courts provision is “quite plainly a due process 
guarantee”). Because the Texas Constitution’s open courts provision confers 
substantial rights to Texas citizens, the legislature cannot arbitrarily or 
unreasonably interfere with this right. LeCroy, 713 S.W.2d at 341. 
Accordingly, a statute or ordinance that unreasonably abridges a justiciable 
right to obtain redress for injuries caused by the wrongful acts of another 
amounts to a denial of due process under the open courts provision. Shah, 
67 S.W.3d at 842; Sax, 648 S.W.2d at 665.
        To 
establish that a statute violates the open courts provision and thereby denies 
him due process, a plaintiff must satisfy a two-part test: (1) he must show he 
has a well recognized common-law cause of action that is being statutorily 
restricted; and (2) he must show the restriction is unreasonable or arbitrary 
when balanced against the legislature's actual purpose in enacting the statute. Sax, 
648 S.W.2d at 665; In re Hinterlong, 109 S.W.3d 611, 626 (Tex. 
App.—Fort Worth 2003, orig. proceeding); see also Owens Corning v. Carter, 
997 S.W.2d 560, 573 (Tex.), cert. denied, 528 U.S. 1005 (1999). 
Concerning the first prong, Texas courts have long recognized that medical 
negligence claims are well-defined common-law causes of action. Lucas v. 
United States, 757 S.W.2d 687, 690 (Tex. 1988). And a statute of limitations 
provision clearly statutorily restricts this common-law medical negligence cause 
of action by limiting the time for bringing a suit. See, e.g., Sax, 648 
S.W.2d at 666. Thus, a medical negligence statute of limitations provision 
operating to bar a plaintiff’s medical negligence claim satisfies the first 
prong of the open courts analysis.
        Concerning 
the second prong, the legislature’s actual purpose in enacting statute of 
limitations provisions limiting the time for bringing a medical negligence suit 
is legitimate: to limit the length of time that medical professionals will be 
exposed to potential liability and thereby reduce medical malpractice insurance 
rates. Id.; see also Tex. 
Rev. Civ. Stat. Ann. art. 4590i, § 1.02. The only undecided issue, 
therefore, is whether the restriction—the proscription of the plaintiff’s 
medical negligence suit—is reasonable when balanced against the 
legislature’s purpose in enacting the statute—to limit the time that medical 
professionals will be exposed to liability. See Lucas, 757 S.W.2d at 690 
(recognizing medical negligence claim was common-law cause of action and damage 
cap restricted plaintiff’s right to redress on this common-law claim, so 
“the remaining inquiry is whether the restriction on [the plaintiffs’] right 
of recovery ‘is unreasonable or arbitrary when balanced against the 
purpose and basis of the statute’”). The law is well settled on this issue: 
The restriction imposed in health care liability claims by article 4590i, 
section 10.01's statute of limitations is reasonable and does not violate the 
open courts guarantee if the plaintiff had a reasonable opportunity to discover 
the alleged wrong and to bring suit before the limitations period expired. Shah, 
67 S.W.3d at 842; Earle v. Ratliff, 998 S.W.2d 882, 889 (Tex. 1999); Morrison 
v. Chan, 699 S.W.2d 205, 207 (Tex. 1985). The restriction is unreasonable if 
it makes a plaintiff’s remedy by due course of law contingent on an impossible 
condition, and being required to file suit before having a reasonable 
opportunity to learn of the alleged injury is an impossible condition. See, 
e.g., Nelson v. Krusen, 678 S.W.2d 918, 921 (Tex. 1984) (discussing how 
requiring a plaintiff whose injuries are not discoverable during the limitations 
period to nonetheless sue during the limitations period is equivalent to an 
impossible condition); Neagle v. Nelson, 685 S.W.2d 11, 12 (Tex. 1985) 
(discussing how article 4590i, section 10.01 cannot operate to cut off a cause 
of action before the plaintiff knew of the wrong's existence); Sax, 648 
S.W.2d at 667 (discussing how insurance code section 5.82 [the predecessor to 
article 4590i] cannot operate to make a minor’s right to redress contingent on 
his parents’ timely filing suit). In other words, the open courts provision is 
violated only when a statute requires a plaintiff to do the impossible—to sue 
before having any reason to know they should sue. See Krusen, 678 S.W.2d 
at 923.
        Appellees 
urge us, however, to apply a different requirement to Boyd’s open courts 
challenge. Appellees contend that to raise a genuine issue of material fact 
concerning application of the open courts provision, Boyd was not required to 
establish that she lacked a reasonable opportunity to discover the alleged wrong 
and to bring suit before the limitations period expired, but instead that “it 
was impossible or exceedingly difficult” for her to discover the wrong during 
limitations. Appellees cite O’Reilly v. Wiseman for this proposition. 
107 S.W.3d 699, 706 (Tex. App.—Austin 2003, pet. denied).[5] 
 We hold that no distinction, other than semantical, exists between an 
impossible-or-exceedingly-difficult-to-discover-the-wrong open courts 
requirement and the more traditional 
no-reasonable-opportunity-to-discover-the-wrong-before-limitations-expired 
requirement.
        We 
decline Appellees’ invitation to apply the 
impossible-or-exceedingly-difficult-to-discover-the-wrong open courts 
requirement mentioned in O’Reilly to the present facts for four main 
reasons. The first two reasons are straightforward and will be discussed 
together. First, O’Reilly itself recognizes that the two requirements 
are the same: the long-used 
reasonable-opportunity-to-discover-the-wrong-before-limitations-expired 
requirement was simply renamed by the O’Reilly court as the 
impossible-or-exceedingly-difficult-to-discover-the-wrong requirement for 
purposes of clarity. Id. at 706 n.10 (“We will use the language 
‘impossible or exceedingly difficult to discover the wrong’ rather than 
‘reasonable opportunity to discover the wrong’ in describing what a 
plaintiff must show in an open-courts challenge.”). Second, because Mrs. 
O’Reilly learned of her cancer diagnosis while four months remained before 
limitations expired, it was not exceedingly difficult for her to discover the 
wrong before limitations ran nor did she lack a reasonable opportunity to 
discover the wrong before limitations ran. Id. at 708. Thus, Appellees’ 
contention that, under O’Reilly, a substantive distinction exists 
between an impossible-or-exceedingly-difficult-to-discover-the-wrong requirement 
and the traditional 
reasonable-opportunity-to-discover-the-wrong-before-limitations-expired 
requirement is not factually supported. Id. at 708; see also Radloff 
v. Dorman, 924 S.W.2d 416, 419 (Tex. App.—Amarillo 1996, writ dism’d by 
agr.) (holding that absent evidence raising issue that four months was not 
reasonable time to bring suit, plaintiffs who learned of injury with four months 
remaining in limitations period failed to rebut defendant’s established 
affirmative defense of limitations).
        Third, 
Appellees argue that, based on O’Reilly, the supreme court’s opinion 
in Hellman v. Mateo, 772 S.W.2d 64, 66 (Tex. 1989) (op. on reh’g) is an 
anomaly and is no longer good law; we cannot agree. Appellees claim that Hellman 
is no longer good law because in Hellman the supreme court placed the 
burden on the defendant doctor to prove that the plaintiff should have known of 
her injury within limitations, while the supreme court’s more recent decision 
in Shah v. Moss places the burden of proof on this issue on the 
plaintiff. The supreme court in Hellman did not, however, misplace the 
burden of proof, nor is Hellman inconsistent with Shah. In Hellman, 
the plaintiff pleaded and raised a genuine issue of material fact as to whether 
she had a reasonable opportunity to learn of her injury during limitations. 772 
S.W.2d at 66 (“Having determined that Hellman alleged and expressly presented 
the facts [i.e., summary judgment evidence] necessary to challenge the 
constitutionality of article 4590i, we must now consider whether [the defendant] 
. . . conclusively established that there is no genuine issue of material fact 
concerning the time when Hellman . . . should have discovered . . . the 
injury”). Thus, Hellman satisfied her initial summary judgment burden of 
pleading and proof on her open courts challenge; this initial burden is the same 
burden discussed in Shah. Shah, 67 S.W.3d at 846-47 (recognizing 
that “it was [the plaintiff’s] burden to raise a fact issue demonstrating 
that he did not have a reasonable opportunity to discover the alleged wrong 
before the limitations period expired so that the open courts guarantee 
applies”). After recognizing that Hellman had satisfied her summary judgment 
burden of raising a fact issue demonstrating that she did not have a reasonable 
opportunity to discover the alleged wrong before the limitations period expired 
so that the open courts guarantee applied, the supreme court then simply noted 
that in light of Hellman’s open courts pleading and summary judgment evidence, 
the defendant was not entitled to summary judgment on limitations unless he 
conclusively negated this matter in avoidance; that is, conclusively established 
that Hellman had a reasonable opportunity to discover the alleged wrong. Hellman, 
772 S.W.2d at 66. Thus, the initial burden of pleading and proof on the open 
courts challenge was placed on the plaintiff in Hellman, just as it was 
in Shah. We cannot agree with Appellees’ contention that Hellman 
is bad law.
        And 
finally, to the extent Appellees interpret O’Reilly as creating a 
substantive distinction between the 
impossible-or-exceedingly-difficult-to-discover-the-wrong open courts 
requirement and the 
reasonable-opportunity-to-discover-the-wrong-before-limitations-expired 
requirement, the distinction is premised upon the perception that the supreme 
court at one time abandoned its historic two-pronged open courts analysis—that 
to establish an open courts violation, a plaintiff must show (1) that he has a 
well-recognized common-law cause of action that is being statutorily restricted 
and (2) that the restriction is unreasonable or arbitrary when balanced against 
the legislature's actual purpose in enacting the statute—then moved to an 
impossible-or-exceedingly-difficult-to-discover-the-wrong test, and then moved 
again back to its forgotten two-prong balancing test. 107 S.W.3d at 706-07.
        We 
cannot agree that the Texas Supreme Court previously departed from its 
well-established, two-pronged open courts analysis. See, e.g., Owens 
Corning, 997 S.W.2d at 573-74 (applying two-prong test in facial open courts 
challenge to Texas’s borrowing statute); St. Luke’s Episcopal Hosp. v. 
Agbor, 952 S.W.2d 503, 508 (Tex. 1997) (applying two-prong test in 
as-applied open courts challenge to statutorily granted immunity to hospital 
allegedly cutting off negligent credentialing claim); Diaz v. Westphal, 941 
S.W.2d 96, 100 (Tex. 1997) (applying two-prong test in as-applied open courts 
challenge to wrongful death and survival actions statute of limitations); Weiner 
v. Wasson, 900 S.W.2d 316, 318-19 (Tex. 1995) (applying two-prong test in 
as-applied open courts challenge to article 4590i's statute of limitations 
application to minors); Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 
355 (Tex. 1990) (applying two-prong test in as-applied open courts challenge to 
wrongful death statute of limitations); Lucus, 757 S.W.2d at 690 
(applying two-prong test in as-applied open courts challenge to article 
4590i’s damage caps); LeCroy, 713 S.W.2d at 341 (applying two-prong 
test in open courts challenge to statute requiring filing fee that was paid into 
state’s general revenue fund); Lebohm v. City of Galveston, 154 Tex. 
192, 195-96, 275 S.W.2d 951, 955 (1955) (op. on reh'g) (applying two-prong test 
in facial open courts challenge to legislatively approved city charter provision 
exempting city from all liability for injuries caused by defective streets); Hanks 
v. City of Port Arthur, 121 Tex. 202, 205, 48 S.W.2d 944, 945 (1932) 
(applying two-prong test in facial open courts challenge to ordinance exempting 
Port Arthur from all liability for injuries caused by defective streets). 
Indeed, departure from the two-prong test is unlikely because it is dictated by 
fundamental constitutional law. Fundamental constitutional law requires a party 
claiming a denial of due process because particular legislation abrogates one of 
its constitutional rights, here the open courts guarantee, to establish (1) the 
legislative encroachment and (2) that the encroachment is arbitrary or 
unreasonable when balanced against the purpose of the legislation. See, e.g., 
Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 983 (1990) 
(recognizing Federal Due Process Clause contains a substantive component that 
bars certain arbitrary, wrongful government actions regardless of the fairness 
of the procedures used to implement them);[6] accord 
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 938 (Tex. 1998) (explaining 
that “[a] generally applicable zoning ordinance will survive a substantive due 
process challenge if it is designed to accomplish an objective within the 
government's police power and if a rational relationship exists between the 
ordinance and its purpose”), cert. denied, 526 U.S. 1144 (1999); Parvin 
v. Dean, 7 S.W.3d 264, 276 (Tex. App.—Fort Worth 1999, no pet.) (“The 
objective of due process is to restrain the government from arbitrary and 
unreasonable exercises of power and to prevent excessive governmental 
encroachment.”). Thus, we cannot agree with Appellees’ suggestion that a 
distinction exists in the open courts test employed by the Texas Supreme Court 
over the years that would trigger a modification of the traditional open courts 
analysis. We examine the summary judgment evidence before us to determine 
whether Appellees conclusively established the affirmative defense of 
limitations, and if so, whether Boyd raised a genuine issue of material fact 
that she had no reasonable opportunity to discover Appellee’s alleged wrongs 
and her alleged injury prior to the expiration of article 4590i, section 10.01's 
limitations period.
IV. Summary 
Judgment Evidence
        Viewing 
only the summary judgment evidence favorable to Boyd, and taking that evidence 
as true, the summary judgment record shows that Boyd had office visits with 
Appellees on specific dates and that she claims that Appellees were negligent on 
those dates.[7]  Boyd began seeing Dr. Kallam, a 
gynecologist, in October 1995. Boyd considered Dr. Kallam to be her primary 
doctor; accordingly, she saw him for minor ailments and for yearly well-woman 
examinations. Boyd saw Dr. Kallam for well woman examinations on December 4, 
1996 and November 16, 1998. During both of these examinations Dr. Kallam 
performed a rectal examination and took a fecal occult stool sample, and these 
studies showed no evidence of blood. Due to a change in her health insurance, 
Boyd began seeing Dr. Thompson in October 1999. She designated Dr. Thompson as 
her primary care physician and saw him for yearly physical examinations, but she 
also continued to see Dr. Kallam and his partner, Dr. Finke, for well woman 
checkups. She saw Barbra Jeffries, R.N., N.P., a nurse practitioner with Dr. 
Kallam and Dr. Finke’s office, for a well woman examination on March 3, 2000. 
Nurse Jefferies obtained a fecal occult stool sample, and again, it was 
negative. Neither Dr. Kallam nor Dr. Finke saw Boyd during this examination, but 
Dr. Finke read over and signed off on Nurse Jefferies’ examination.[8]
        According 
to Boyd, beginning in 1998, during each of the well woman and physical 
examinations, she complained of rectal bleeding and, on occasion, constipation. 
Each of the Appellees examined Boyd and assured her that her rectal bleeding 
stemmed from her hemorrhoids. According to Boyd, when she saw Dr. Kallam on 
February 21, 2001, he “not only did a digital rectal examination, but also 
used . . . an Anoscope” to examine her rectum and informed Boyd that she had 
“a little fissure present . . . that was causing the bleeding.” Despite 
Boyd’s continued complaints, Appellees attributed Boyd’s rectal bleeding to 
hemorrhoids. During a February 12, 2002 office visit with Dr. Thompson, Boyd 
demanded a colonoscopy, Dr. Thompson ordered one, and it revealed Boyd’s stage 
IV colorectal cancer.
        Boyd 
filed numerous expert affidavits as summary judgment evidence. Boyd’s own 
affidavit explains that the doctor who performed her colonoscopy told her that 
the large, cancerous tumor in her sigmoid colon or some precursor abnormality, 
probably in the form of an adenomatous polyp, had been present and growing in 
Boyd’s colon since 1996. The thirty-page affidavit of Rhett Fredric, M.D., an 
oncologist, likewise explained as follows:
  
Had Ms. Boyd been properly screened prior to March 2000, or properly worked up 
beginning in March 2000, some abnormality would have been detectable, probably 
an adenomatous polyp. If an adenomatous polyp or cancer had been detected by 
screening, colonoscopy or lower GI studies, standard medical care would have 
been to remove the polyp or cancer, or biopsy the abnormality, and then 
institute surgery and/or chemotherapy if the tumor was malignant. The delay in 
diagnosing Ms. Boyd’s tumor occurred from 1996 to 2002, and resulted in, at a 
minimum, an approximate two[-]year delay in diagnosis. This delay in diagnosis 
in reasonable medical probability, based upon the medical literature, resulted 
in Ms. Boyd going from a Stage II or early Stage III to a Stage IV.

Boyd 
also filed expert affidavits opining that each of the Appellees was negligent 
and that their negligence proximately caused her injuries.
V. Application 
of Standards of Review to Summary Judgment Evidence
        A. 
Boyd’s Negligence Allegations
        Boyd 
alleges two general categories of negligence against the doctors and Nurse 
Jefferies in this case. First, she alleges that they were all negligent by 
failing at each visit after she turned fifty years old to recommend that she 
undergo colorectal cancer screening. Second, she alleges that they were all 
negligent by misdiagnosing or misinterpreting her rectal bleeding and symptoms 
as hemorrhoids and telling her that she suffered only from this nonthreatening 
condition, by not performing diagnostic testing concerning her rectal bleeding, 
and by failing to diagnose her cancer.
        B. 
Appellees Conclusively Established the Affirmative Defense of
        Limitations
        Article 
4590i, section 10.01 provides that notwithstanding any other law, a person may 
not bring a health care liability claim unless the person files the action 
within two years from the occurrence of the tort. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 
10.01. The limitations period provided in article 4590i, section 10.01 runs from 
one of three possible dates: (1) the date of the tort; (2) the last date of the 
relevant course of treatment; or (3) the last date of the relevant 
hospitalization. Husain v. Khatib, 964 S.W.2d 918, 919 (Tex. 1998). 
Although the statute specifies three possible dates on which the statute of 
limitations may start running, when the precise date of the tort is known, the 
statutory two-year period begins on that date. See Earle, 998 S.W.2d at 
886; Husain, 964 S.W.2d at 919; Kimball v. Brothers, 741 S.W.2d 
370, 372 (Tex. 1987).
        Here, 
Boyd claims that Appellees were negligent on the specific dates when one of them 
saw her and did not perform or order colorectal cancer screening because of her 
age, misdiagnosed her rectal bleeding as hemorrhoids, and failed to perform or 
order diagnostic testing: December 4, 1996, November 16, 1998, October 25, 1999, 
January 12, 2000, and March 3, 2000. Because the precise dates of the alleged 
torts by Appellees are known, the statutory limitations period began on those 
dates and expired two years later.[9]  See 
Earle, 998 S.W.2d at 886; Husain, 964 S.W.2d at 919; Kimball, 
741 S.W.2d at 372; Karley v. Bell, 24 S.W.3d 516, 521 (Tex. App.—Fort 
Worth 2000, pet. denied); Voegtlin, 977 S.W.2d at 810-11. Boyd did not 
file suit until August 30, 2002. Thus, Appellees conclusively established their 
affirmative defense of limitations as to Boyd’s claims of negligence occurring 
prior to August 30, 2000, and the burden shifted to Boyd to raise a genuine 
issue of material fact demonstrating that she did not have a reasonable 
opportunity to learn of Appellees’ alleged wrongs or her alleged injury before 
limitations expired. See Shah, 67 S.W.3d at 836; Earle, 998 S.W.2d 
at 889; see also Clear Creek Basin Auth., 589 S.W.2d at 678 (holding that 
when movant establishes right to summary judgment burden shifts to nonmovant to 
raise issue of fact precluding judgment).
        C. 
Open Courts Analysis
        1.     No Fact Issue on 
Negligent-Failure-to-Screen-Based-on-Age Claims
        Boyd 
produced summary judgment evidence establishing that the standard of care 
requires colorectal cancer screening to be performed on all patients over fifty 
years old. She complains that Appellees breached this standard of care on 
multiple occasions by failing to order colorectal cancer screening on her after 
she became fifty years old. Boyd knew, however, at the time of each of her 
office visits with Appellees that she was fifty years old and that they had 
failed to order colorectal cancer screening. See Jennings v. Burgess, 917 
S.W.2d 790, 794 (Tex. 1996) (holding negligent referral claim barred because 
plaintiff knew at each visit that defendant did not refer her to plastic 
surgeon). She produced no summary judgment evidence demonstrating that she did 
not have a reasonable opportunity to learn of Appellees’ failure to order 
age-based screening for colorectal cancer. See Shah, 67 S.W.3d at 846-47 
(holding plaintiff failed to raise fact issue demonstrating that he did not have 
reasonable opportunity to discover alleged negligent performance of his back 
surgery). Thus, we hold that Boyd has failed to raise a genuine issue of 
material fact that she did not have a reasonable opportunity to learn of the 
alleged wrong—the failure to perform colorectal cancer screening simply 
because she was more than fifty years old—within the limitations period for 
each of her office visits with Appellees occurring prior to August 30, 2000.[10]  Because the failure to conduct colorectal cancer 
screening based on age is the only negligence claim Boyd alleges with respect to 
the December 4, 1996 visit with Dr. Kallam, the trial court properly concluded 
that Boyd’s negligence claim concerning this visit is barred by the statute of 
limitations.
        2.     Fact 
Issues Exist on Negligent Failure to Diagnose Claims, Misdiagnosis Claims, and Negligent Failure to Order Diagnostic Testing 
Claims
        According 
to Boyd, whose testimony we must take as true for purposes of this summary 
judgment proceeding, beginning in 1998, she complained to Appellees on each 
office visit of rectal bleeding and occasional constipation. Boyd claims that 
Appellees repeatedly told her that she suffered from hemorrhoids and attributed 
her symptoms to hemorrhoids. Boyd’s experts opined in their affidavits that 
changes in bowel habits and rectal bleeding are possible symptoms of colorectal 
cancer, that the standard of care required Appellees to take steps to “rule 
out a possible lower bowel etiology of her symptoms,” and that their failure 
to do so constituted negligence.
        Boyd’s 
summary judgment evidence viewed in the light most favorable to her raises an 
issue of fact concerning whether she had a reasonable opportunity to discover 
Appellees’ alleged wrongs or her alleged injury.[11]  
See Hellman, 772 S.W.2d at 65-66 (holding plaintiff alleging pathologist 
negligently diagnosed lymph node as benign raised fact issue concerning whether 
she had reasonable opportunity to discover her injury during limitations); Thompson 
v. Pate, 69 S.W.3d 743, 748 (Tex. App.—El Paso 2002, no pet.) (holding 
plaintiff who had gallbladder removal surgery and was told gallbladder had been 
removed raised fact issue concerning whether she had reasonable opportunity to 
learn gallbladder had not been removed when she was symptom free for five years 
after surgery); Gagnier v. Wichelhaus, 17 S.W.3d 739, 744 (Tex. 
App.—Houston [1st Dist.] 2000, pet. denied) (holding plaintiff who was told 
she no longer had an IUD and underwent years of fertility treatment raised fact 
issue concerning whether she had no reasonable opportunity to learn that IUD was 
still in her uterus during limitations); Del Rio v. Jinkins, 730 S.W.2d 
125, 126-27 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) (holding 
plaintiff who alleged negligence in performing radiation for testicular cancer 
raised issue of fact concerning whether he had a reasonable opportunity to 
discover that his stomach pain stemmed from alleged negligent treatment for 
testicular cancer). Boyd allegedly repeatedly reported rectal bleeding and 
occasional constipation and, according to her testimony, was repeatedly told 
that she was suffering only from hemorrhoids.  The difference between this 
case and the cases relied upon by Appellees is that Boyd’s hemorrhoids 
diagnosis made it impossible for her to learn of Appellees’ alleged wrongs, or 
her alleged injury, colon cancer: doctors attributed her symptoms to 
hemorrhoids, not cancer. Accord, Thompson, 69 S.W.3d at 748 (believing 
plaintiff’s gallbladder had been removed, doctors attributed her symptoms to 
other parts of her gastrointestinal system). In the cases relied upon by 
Appellees, the plaintiffs had some known injury or medical procedure and could 
or should have related their symptoms to the prior injury or procedure to learn 
of the present alleged wrong. See, e.g., Batten v. Hunt, 18 S.W.3d 235, 
239 (Tex. App.—Austin 1999, pet. denied); Ericson v. Roberts, 910 
S.W.2d 608, 613 (Tex. App.—Tyler 1995, no writ).
        In 
Batten, the plaintiff’s open courts challenge did not save his 1997 
claim against Dr. Hunt alleging the negligent failure to recommend follow-up 
testing after the 1989 removal of a precancerous tumor from the plaintiff’s 
colon because the plaintiff produced no summary judgment evidence that he ever 
saw Dr. Hunt between the 1989 surgery and the 1997 suit. 18 S.W.2d at 239. The 
court of appeals also noted, “Even if it were unreasonable to require [the 
plaintiff] to know in May 1989 that Hunt should have told him to have follow-up 
examinations, [the plaintiff’s] continuing symptoms certainly provided the 
impetus to seek further examinations well before 1996.” Id. Thus, 
following the removal of a precancerous colon tumor, the plaintiff in Batten 
suffered for several years from unexplained, continuing symptoms related to 
colon cancer. Id. Likewise, in Ericson, the plaintiff’s open 
courts challenge did not save his claim that Dr. Roberts negligently performed a 
June 14, 1990 circumcision. 910 S.W.2d at 613. From the date of the surgery, Mr. 
Ericson experienced pain, discomfort, and redness. Id. Thus, Mr. Ericson 
possessed a reasonable opportunity to discover the alleged wrong within 
limitations. Id.
        Here, 
unlike in Batten and Ericson, on the dates Appellees examined 
Boyd, and thereafter throughout the limitations period as to those visits, 
Appellees allegedly provided Boyd with a benign explanation for her rectal 
bleeding: hemorrhoids. Viewing the summary judgment evidence in the light most 
favorable to Boyd, she, unlike Mr. Batten and Mr. Ericson, was not aware during 
limitations of symptoms she reasonably should have attributed to the wrong she 
now alleges. The summary judgment evidence at least raises a genuine issue of 
material fact concerning whether Boyd reasonably should have disbelieved two 
doctors’ hemorrhoids diagnosis and attributed her symptoms to some other 
cause, perhaps colorectal cancer, which she would have had to do in order to 
learn of her cancer within limitations.
        Appellees 
also claim that Boyd had a reasonable opportunity to learn of her cancer and of 
their alleged wrongs within the limitations period because in a January 16, 2001 
office visit with Dr. Thompson, he gave her a take-home fecal occult blood test. 
Viewing the summary judgment evidence in the light most favorable to Boyd, she 
took the test home and read the directions.[12]  
The directions told users not to take the test during a menstrual cycle, if they 
were suffering from bleeding hemorrhoids, or if they had cuts on their hands. 
The directions stated that bleeding hemorrhoids would render the test 
inaccurate. Boyd claims that after reading the directions, because she was told 
she had bleeding hemorrhoids, she called Dr. Thompson’s office and was told 
not to take the test because it would be inaccurate and that Dr. Thompson would 
call her if she was to do anything different. Appellees claim that if Boyd had 
completed this test, she would have learned of her cancer. We are required to 
take Boyd’s affidavit testimony as true. See, e.g., Am. Tobacco Co., 
951 S.W.2d at 425. Taking as true Boyd’s statements that Dr. Thompson’s 
office told her not to take the test, Appellees’ argument fails. Boyd cannot 
be faulted for following a doctor’s instructions—that is, we cannot say that 
Boyd had a reasonable opportunity to learn of Appellees’ alleged wrongs or to 
learn of her cancer if only she would have disregarded instructions given to her 
by her doctor’s office.
        Appellees 
also claim that Boyd should have known of her cancer because she is a nurse and 
because her family has a history of colon cancer. The summary judgment record 
before us reflects that Boyd is a psychiatric nurse and that she was concerned 
about her rectal bleeding, so she discussed it with her doctors. One of Boyd’s 
expert’s affidavit provides as follows:
 
Furthermore, both Dr. Kallam and Dr. Thompson deny knowing that Ms. Boyd had 
colon cancer or other serious disease prior to April 2002. If two doctors did 
not know about a serious disease in a patient after seeing a patient multiple 
times, it is absurd to hold a patient to a higher level of knowledge in this 
regard. Accordingly, Ms. Boyd had no reason to seek a third opinion or institute 
additional investigation into the cause of her complaints on her own until she 
did in 2002.
 
 
        Appellees 
have cited no authority for the proposition that we should hold a patient who is 
a nurse or a patient with a family history of a certain type of injury to the 
level of knowledge of the doctor caring for the patient. Nor have we located any 
such authority. Moreover, it seems illogical to hold that Boyd, a psychiatric 
nurse, had a reasonable opportunity to learn of her colon cancer when Appellees, 
who possessed superior medical training concerning cancer and who also possessed 
the same information as Boyd concerning her family history, did not learn of her 
cancer. Consequently, we decline to hold that as a matter of law Boyd’s 
psychiatric nursing experience and family history of colon cancer somehow 
provided her with a reasonable opportunity to learn of her cancer or of 
Appellees’ alleged wrongs.
        Appellees 
further argue that Boyd possessed a reasonable opportunity to learn of her 
cancer because she could have demanded a colonoscopy—which she ultimately did, 
and which led to her colorectal cancer diagnosis—sooner. We decline to hold 
that a patient’s ongoing ability to request or demand any diagnostic test 
translates to a reasonable opportunity to learn of an undiagnosed medical 
condition. To hold otherwise would put a patient in charge of her own medical 
care, demanding for herself whatever diagnostic testing she desired.
        Finally, 
applying the Sax balancing test to the present facts, because Boyd’s 
claims against Appellees for negligence occurring after August 30, 2000, remain 
pending in the trial court, application of article 4590i, section 10.01's 
limitations provision to Boyd’s pre-August 30, 2000 negligent failure to 
diagnose claims, misdiagnosis claims, and negligent failure to order diagnostic 
testing claims is arbitrary when balanced against the purpose of the statute. 
Application of the statute of limitations to these claims does not dispose of 
Boyd’s entire lawsuit, does not prevent Appellees from possible exposure to 
liability on Boyd’s timely filed claims, and therefore does not appear to 
promote the statute’s purpose of lowering medical malpractice insurance 
premiums. Compare Shah, 67 S.W.3d at 846 (application of 
limitations provision barred all plaintiff’s claims); Earle, 998 S.W.2d 
at 889 (same); Batten, 18 S.W.2d at 239 (same); Ericson, 910 
S.W.2d at 613 (same).
        Having 
concluded that, viewing the summary judgment evidence in the light most 
favorable to Boyd, a fact issue exists concerning whether she had a reasonable 
opportunity to discover her injury and Appellees’ alleged wrongs—the failure 
to diagnose her cancer, the misdiagnosis that her symptoms were attributable to 
hemorrhoids, and the failure to order diagnostic testing based on her 
symptoms—during the limitations periods for the November 16, 1998, October 25, 
1999, January 12, 2000, and March 3, 2000 office visits, we hold that the Texas 
Constitution’s open courts guarantee precludes application of article 4590i, 
section 10.01's limitations provision to cut off these claims as a matter of 
law.[13]  We sustain Boyd’s first issue as to 
her negligent failure to diagnose claims, misdiagnosis claims, and negligent 
failure to order diagnostic testing claims. We overrule Boyd’s first issue as 
to her negligent failure-to-screen-based-on-age claims.
        3. 
Boyd Filed Suit Within a Reasonable Time
        In 
her second issue, Boyd claims that she filed suit against Appellees within a 
reasonable time after learning of her alleged injury. A plaintiff who raises a 
genuine issue of material fact as to the applicability of the open courts 
provision to avoid limitations may nonetheless fail to obtain relief under the 
open courts provision if he does not use due diligence and sue within a 
reasonable time after learning about the alleged wrong. See Shah, 67 
S.W.3d at 847 (holding unexplained seventeen-month delay between learning of 
injury and filing suit unreasonable); Pech v. Estate of Tavarez, 112 
S.W.3d 282, 287 (Tex. App.—Corpus Christi 2003, no pet.) (holding 
fourteen-month delay unreasonable when attributable to family matters rather 
than investigation of and filing of claim); Thompson, 69 S.W.3d at 749 
(holding seventeen-month delay unreasonable); Fiore v. HCA Health Servs. of 
Tex., Inc., 915 S.W.2d 233, 237 (Tex. App.—Fort Worth 1996, writ denied) 
(holding thirteen-month delay unreasonable); LaGesse v. PrimaCare, Inc., 
899 S.W.2d 43, 47 (Tex. App.—Eastland 1995, writ denied) (holding twelve-month 
delay excessive where only reasons given for delay was attorney’s busyness). A 
reasonable delay is allowed for investigation, preparation and filing the claim 
after the injury is discovered. Gagnier, 17 S.W.3d at 745; DeRuy v. 
Garza, 995 S.W.2d 748, 752 (Tex. App.—San Antonio 1999, no pet.).
        Here, 
Boyd filed suit approximately four months after she learned of her 
injury—colorectal cancer. We have not located, and Appellees have not cited, 
any authority for the proposition that Boyd’s four-month delay in filing suit 
is unreasonable. We sustain Boyd’s second issue.
VI. Conclusion
        Having 
sustained Boyd’s second issue and her first issue in part, we reverse the 
trial court’s partial summary judgment for Appellees on Boyd’s negligent 
failure to diagnose claims, misdiagnosis claims, and negligent failure to order 
diagnostic testing claims based on the November 16, 1998, October 25, 1999, 
January 12, 2000, and March 3, 2000 office visits. We remand those claims to the 
trial court.
        We 
affirm the trial court’s partial summary judgment concerning Boyd’s 
negligent-failure-to-screen-based-on-age claims and concerning the December 4, 
1996 office visit because the negligent failure to screen based on age is the 
only negligence alleged to have occurred at that office visit. We also affirm 
the trial court’s partial summary judgment for Family Healthcare Associates on 
Boyd’s direct negligence theories of recovery.
   
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
A:   GARDNER, WALKER, and MCCOY, JJ.
 
DELIVERED: 
November 24, 2004


NOTES
1.  
The trial court also previously granted a partial summary judgment for 
Obstetrical and Gynecological Associates of Arlington on the ground that Drs. 
Kallam and Finke and Nurse Jefferies were no longer employed by this entity at 
the time of their alleged negligence and issued an order severing this 
claim.  That partial summary judgment is not challenged here.  
Accordingly, Obstetrical and Gynecological Associates of Arlington is, and shall 
hereinafter be, omitted from the style of this appeal.
2.  
Appellees moved for summary judgment based on article 4590i, section 10.01, 
which was subsequently repealed. See Act of May 5, 1995, 74th 
Leg., R.S., ch. 140, § 10.01, repealed by Act of June 2, 2003, 78th 
Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 
74 (Vernon 2004)).  The old law continues in effect for application to 
cases like this one, filed before the new Act’s September 1, 2003 effective 
date.  We hereinafter cite the old law as article 4590i.
3.  
Appellees did not move for summary judgment on Boyd’s claims alleging 
negligence occurring after August 30, 2000.
4.  
We disagree with the cases holding that a plaintiff bears the burden of 
pleading, but not of proof, concerning an open courts violation.  See, 
e.g., Simmons v. Healthcare Ctrs. of Tex., Inc., 55 S.W.3d 674, 678 (Tex. 
App.—Texarkana 2001, no pet.) (holding plaintiff must only allege facts 
setting up open courts defense); Voegtlin v. Perryman, 977 S.W.2d 806, 
811 (Tex. App.—Fort Worth 1998, no pet.) (same: holding plaintiff has only 
burden of pleading violation of open courts provision); Krueger v. Gol, 
787 S.W.2d 138, 140 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (op. on 
reh’g) (holding defendant doctor bore burden of proof to establish no genuine 
issue of fact existed concerning when the plaintiff should have learned of the 
alleged malpractice).
5.  
Because Appellees premise most of the arguments in their briefs on the O’Reilly 
opinion, we address it in detail.
6.  
The Texas Constitution’s due course of law open courts provision provides 
rights in addition to those provided by the Fourteenth Amendment of the United 
States Constitution.  Lucas, 757 S.W.2d at 690; Sax, 648 
S.W.2d at 661.  The Fourteenth Amendment provides the floor for Texas 
citizen’s due process rights while the Texas Constitution provides the 
ceiling. LeCroy, 713 S.W.2d at 338.  Thus, federal due process 
analysis is relevant as articulating a due process floor, even though the Texas 
Constitution’s open courts provision provides more due process protection.
7.  
Boyd claims Appellees were negligent on the following dates:  Dr. Kallam—December 
4, 1996 and November 16, 1998; Dr. Thompson—October 25, 1999 and January 12, 
2000; Dr. Finke and Nurse Jefferies—March 3, 2000.
8.  
Boyd’s pleadings allege that Dr. Finke was negligent in her approval of and 
supervision of Nurse Jefferies’ negligent misdiagnoses or misinterpretation of 
Boyd’s rectal bleeding and symptoms as hemorrhoids, including conveying to 
Boyd that she suffered only from this nonthreatening condition. Boyd’s 
pleadings also allege that Dr. Finke was negligent in failing to order 
diagnostic testing.
9.  
The tolling provision of article 4590i, section 4.01 is not at issue here.
10.  
Boyd’s contentions that Appellees should have ordered colorectal cancer 
screening for reasons other than that she was over fifty years old, i.e., based 
on her symptoms, fall within her negligent failure to diagnose claims and 
negligent failure to order diagnostic testing claims.  These claims are 
discussed in section V.C.2 infra.
11.  
The parties do not draw a distinction, if one exists, between a “reasonable 
opportunity to discover the alleged wrong” and a “reasonable 
opportunity to discover the alleged injury,” and none is necessary in 
this case because Boyd’s summary judgment evidence raises genuine issues of 
material fact concerning both.  See, e.g., Shah, 67 S.W.3d at 
842 (alleged wrong); Earle, 998 S.W.2d at 889 (alleged wrong); Krusen, 
678 S.W.2d at 921 (alleged injury).
12.  
Because Appellees moved for summary judgment strictly on limitations grounds, we 
consider the summary judgment evidence as it pertains to only that issue.
13.  
Although Boyd has raised a fact issue in this summary judgment proceeding on the 
reasonable-opportunity-to-discover-the-wrong-before-limitations-expired open 
courts requirement, she still bears the burden of proof on this issue at 
trial.  See Edgewood Indep. Sch. Dist. v. Meno, 917 S.W.2d 717, 725 
(Tex. 1995) (recognizing that any party alleging unconstitutionality of statute 
has evidentiary burden of proving all facts necessary to show 
unconstitutionality).